34

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

D-11 MITESHKUMAR PATEL, R.Ph.,
D-20 ANMY TRAN, D.P.M.,
D-21 MARK GREENBAIN, M.D.,
D-23 SANYANI EDWARDS,
D-25 LEODIS ELLIOTT,
D-27 MEHUL PATEL, R.Ph.,
D-28 PRADEEP PANDYA, R.Ph.,
D-29 VIKAS SHARMA, R.Ph.,
D-30 MUKESH KHUNT, R.Ph.,
D-31 RICHARD UTARNACHITT, M.D.,
D-32 RUBEN BENITO, M.D.,
D-33 CARL FOWLER, M.D.,
D-34 JAVAID BASHIR, M.D.,
D-35 RAJAT DANIEL, M.D.,
D-36 VINOD PATEL,
D-37 ATUL PATEL,
D-38 ANTHONY MACKLIN, a.k.a. "Jimbo,"
D-39 MICHAEL THORAN, a.k.a. "Ace,"

                    Defendants.
_____/

CASE NO. 11-cr-20468

HON. ARTHUR J. TARNOW

VIO.   18 U.S.C. § 1349
       18 U.S.C. § 1347
       21 U.S.C. § 846
       21 U.S.C. § 841(a)(1)
       18 U.S.C. § 2
       18 U.S.C. § 371
       18 U.S.C. § 982
       21 U.S.C. § 853

## FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### The Health Insurance Programs

1.      The Medicare program was a federal health care program providing benefits to

persons who were over the age of 65 or disabled.  Medicare was administered by the Centers for

1

Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     "Part D" of the Medicare program subsidized the costs of prescription drugs for Medicare beneficiaries in the United States. It was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and went into effect on January 1, 2006. Part D benefits were administered by private insurance plans that were reimbursed by Medicare through CMS.

4.     Beneficiaries could obtain Part D benefits in two different ways: they could join a Prescription Drug Plan which covered only prescription drugs; or they could join a Medicare Advantage Plan that covered both prescription drugs and medical services.

5.     Under Part D, a pharmacy could contract with multiple private insurance plans or their Pharmacy Benefit Managers which provided Medicare Part D coverage but could also submit claims for payment to a private insurance plan with which it did not have a contract. The pharmacy would submit claims for prescription fills obtained by Medicare Part D beneficiaries.

6.     Typically, a Medicare beneficiary enrolled in a Medicare Part D plan would fill their prescription at a pharmacy utilizing their Medicare Part D plan coverage to pay for the prescription. The pharmacy would then submit the prescription claim for reimbursement to the Medicare Part D beneficiary's Part D plan for payment under the beneficiary's Health Insurance Claim Number and/or Medicare Plan identification number.

7.      Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician home and office visits, and other health care benefits, items, and services, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

8.      By becoming a participating provider in Medicare Part B, enrolled providers agree to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

9.      Upon certification, the medical provider, whether a clinic or an individual, is assigned a provider identification number for billing purposes (referred to as a "PIN"). When the medical provider renders a service, the provider submits a claim for reimbursement to the Medicare contractor/carrier that includes the PIN assigned to that medical provider. When an individual medical provider is associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

10.      Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers can only submit claims to Medicare for services they rendered and providers must maintain patient records to verify that the services were provided as described on the claim.

3

11.    Part A of the Medicare program is a medical insurance program that provided, among other things, coverage for physical therapy, occupational therapy, and skilled nursing services.

12.    A home health agency is an entity that provides health services, including but not limited to skilled nursing, physical and occupational therapy, and speech pathology services to homebound patients.  The home health services at issue in this Superseding Indictment were covered by Medicare Parts A and B.

13.    The Michigan Medicaid program ("Medicaid") was a federal and state funded program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan.  Individuals who received benefits under the Medicaid program were similarly referred to as "beneficiaries."

14.    Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

15.    Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled.  Among the specific medical services and products provided by Medicaid were reimbursements to pharmacies for the provision of prescription drugs.  Generally, Medicaid covered these costs if, among other requirements, they were medically necessary and ordered by a physician.

16.    In addition to Medicare and Medicaid, numerous private entities (collectively, "the private insurers"), also provided health insurance plans, affecting commerce, under which medical benefits, items, and services, were provided to individuals.  Individuals who received

4

benefits under private health insurance plans offered by the private insurers are similarly referred to as "beneficiaries."

17.     The private insurers provided health insurance plans that constituted "health care benefit programs" as defined by Title 18, United States Code, Section 24(b) and referenced in Title 18, United States Code, Section 1347.

18.     The private insurers compensated medical service providers for medical services, including the provision of prescription drugs, that were actually rendered and were medically necessary.

19.     To receive reimbursement from the private insurers, medical service providers submitted or caused the submission of claims, either electronically or in writing, to the private insurer for payment of services, either directly or through a billing company.

### The Pharmacies

20.     Caring Pharmacy was the assumed name of multiple Michigan corporations that did business at 4000 W. Davidson Street in Detroit, Michigan.   Caring Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

21.     Detroit Care Pharmacy, and later Wayne Pharmacy, were the assumed names of multiple Michigan corporations that did business at 430 Mack Avenue in Detroit, Michigan. Detroit Care Pharmacy and Wayne Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

22.     Grand River Pharmacy, Friendly Pharmacy, Kalika Corporation, and Levan Pharmacy were the assumed names of multiple Michigan corporations that did business at 19460 Grand River Avenue in Detroit, Michigan.   Grand River Pharmacy, Friendly Pharmacy, Kalika

5

Corporation, and Levan Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

23.     Rapid Drugs Pharmacy, and later Noblecare Pharmacy, was the assumed name of a Michigan Corporation that did business at 22972 Lahser in Southfield, Michigan.   Rapid Drugs Pharmacy and Noblecare Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

24.     Best Care Pharmacy was the assumed name of a Michigan Corporation that did business at 27101 Schoenherr Road in Warren, Michigan.   Best Care Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

25.     Highland Park Pharmacy was the assumed name of multiple Michigan corporations that did business at 28001 Schoenherr Road in Warren, Michigan.   Highland Park Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

26.     Independent Community Pharmacy was the assumed name of a Michigan corporation that did business at 8742 W. Warren Ave. in Dearborn, Michigan.   Independent Community Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

27.     Tri-City Apothecary was the assumed name of a Michigan corporation that did business at 3720 Katalin Court in Bay City, Michigan.   Tri-City Apothecary purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

28.     Taylor Apothecary was the assumed name of a Michigan corporation that did business at 7700 Telegraph Road in Taylor, Michigan.   Taylor Apothecary purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

6

29.     Be Well Pharmacy was a Michigan corporation that did business at 1964 W. 11 Mile Road in Berkley, Michigan.   Be Well Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

30.     Care For You Pharmacy was the assumed name of a Michigan corporation that did business at both 14825 West McNichols Road and 15101 West McNichols Road in Detroit, Michigan.   Care For You Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

31.     Preferred Care Pharmacy was the assumed name of multiple Michigan corporations that did business at 461 W. Huron Street in Pontiac, Michigan.   Preferred Care Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

32.     Preferred Pharmacy was the assumed name of multiple Michigan corporations that did business at 1639 Big Beaver Road, Suite 101, in Troy, Michigan.   Preferred Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurance beneficiaries.

33.     Sapphire Apothecary was the assumed name of a Michigan corporation that did business at 690 S. Trumbell in Bay City, Michigan.   Sapphire Apothecary purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

34.     Prestige Drugs was the assumed name of multiple Michigan corporations that did business at 116 W. Eight Mile Road in Hazel Park, Michigan.   Prestige Drugs purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

35.     Prestige Drugs Pharmacy was the assumed name of a Michigan corporation that did business at 20770 Greenfield in Oak Park, Michigan.  Prestige Drugs Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

36.     Prestige Pharmacy was the assumed name of a Michigan corporation that did business at 9600 Dexter Road in Detroit, Michigan.   Prestige Drugs Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

37.     Glendale Pharmacy was the assumed name of a Michigan corporation that did business at 211 Glendale Street in Detroit, Michigan.   Glendale Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

38.     Airport Apothecary was a Michigan corporation that did business at 6620 Highland Road in Waterford, Michigan, and at 2550 Telegraph Road, Suite 107A in Bloomfield Hills, Michigan.   Airport Apothecary purported to provide prescription drugs to Medicare, Medicaid, and private insurance beneficiaries.

39.     RX Now Pharmacy was the assumed name of a Michigan corporation that did business at 38525 8 Mile Road in Livonia, Michigan.   RX Now Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

40.     Davenport Pharmacy was the assumed name of a Michigan Corporation that did business at 3406 Davenport in Saginaw, Michigan.   Davenport Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

41.     Commerce Township Pharmacy was the assumed name of a Michigan corporation that did business at 2455 Union Lake in Commerce Township, Michigan.   Commerce Township Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

42.     Responsible Care Pharmacy was the assumed name of a Michigan corporation that did business at 430 Mack Avenue, Lower Level, in Detroit, Michigan.   Responsible Care Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

43.     Diamond  Pharmacy was the assumed name of a Michigan corporation that did business at 119 East Patterson in Kalamazoo, Michigan.   Diamond Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

44.     Eastpointe Pharmacy was the assumed name of a Michigan corporation that did business at 18325 Ten Mile Road in Roseville, Michigan.   Eastepointe Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

45.     Rapid Pharmacy was the assumed name of a Michigan Corporation that did business at 11664 Martin in Warren, Michigan.   Rapid Pharmacy purported to provide prescription drugs to Medicare, Medicaid, and private insurer beneficiaries.

46.     Babubhai Patel, R.Ph., a resident of Wayne County, Michigan, was the beneficial owner, controller, and manager of Caring Pharmacy, Detroit Care Pharmacy, Wayne Pharmacy, Grand River Pharmacy, Friendly Pharmacy, Kalika Corporation, Levan Pharmacy, Rapid Drugs, Noblecare Pharmacy, Best Care Pharmacy, Highland Park Pharmacy, Independent Community Pharmacy, Tri City Apothecary, Be Well Pharmacy, Taylor Apothecary, Care For You Pharmacy, Preferred Care Pharmacy, Preferred Pharmacy, Sapphire Apothecary,  Prestige Pharmacy, Prestige Drugs Pharmacy, Prestige Drugs, Glendale Pharmacy, Airport Apothecary, RX Now Pharmacy, Davenport Pharmacy, Commerce Township Pharmacy, Responsible Care Pharmacy, Diamond Pharmacy, Eastpointe Pharmacy, and Rapid Pharmacy (collectively "the Patel Pharmacies").

9

## The Home Health Agencies

47.     First Michigan Home Health Care was the assumed name of a Michigan Corporation that did business at several locations in Livonia and Oak Park, Michigan. First Michigan Home Health Care purported to provide home health care services to Medicare beneficiaries.

48.     Anrex Home Care and Anrex Personal Care were the assumed names of Michigan Corporations that did business at 37248 Ford Road in Westland, Michigan. Anrex Home Care and Anrex Personal Care purported to provide home health care services to Medicare beneficiaries.

49.     Babubhai Patel, defendant VINOD PATEL, and another co-conspirator were the owners and operators of First Michigan Home Health Care. A co-conspirator was the owner and operator of Anrex Home Care and Anrex Personal Care. Though not an owner of the Anrex entities, Babubhai Patel regularly advised the co-conspirator on the operations of these home health care companies, and assisted co-conspirators in recruiting physicians to work with the Anrex entities. Collectively, First Michigan Home Health Care, Anrex Home Care, and Anrex Personal Care are hereafter referred to as "The Patel Home Health Agencies."

## The Defendants

50.     MITESHKUMAR PATEL, R.Ph., was a pharmacist who purportedly filled prescriptions for Medicare, Medicaid, and private insurance beneficiaries at the Patel Pharmacies.

51. ANMY TRAN, D.P.M., was a podiatrist licensed in the State of Michigan who prescribed drugs for Medicare, Medicaid, and private insurance beneficiaries that were purportedly filled at the Patel Pharmacies. ANMY TRAN also referred Medicare beneficiaries to First Michigan Home Health Care, purportedly for the purpose of receiving home health services.

52. MARK GREENBAIN, M.D., was a physician licensed in the State of Michigan who prescribed drugs for Medicare, Medicaid, and private insurance beneficiaries that were purportedly filled at the Patel Pharmacies.

53. SANYANI EDWARDS was a licensed psychologist who recruited Medicare, Medicaid, and private insurance beneficiaries and induced those beneficiaries to have their prescriptions purportedly filled at the Patel Pharmacies.

54. LEODIS ELLIOTT was a patient recruiter, or "marketer," who recruited Medicare, Medicaid, and private insurance beneficiaries and induced those beneficiaries to have their prescriptions purportedly filled at the Patel Pharmacies.

55. MEHUL PATEL, R.Ph., was a pharmacist who purportedly filled prescriptions for Medicare, Medicaid, and private insurance beneficiaries at the Patel Pharmacies.

56. PRADEEP PANDYA, R.Ph., was a pharmacist who purportedly filled prescriptions for Medicare, Medicaid, and private insurance beneficiaries at the Patel Pharmacies.

57. VIKAS SHARMA, R.Ph., was a pharmacist who purportedly filled prescriptions for Medicare, Medicaid, and private insurance beneficiaries at the Patel Pharmacies.

58. MUKESH KHUNT, R.Ph., was a pharmacist who purportedly filled prescriptions for Medicare, Medicaid, and private insurance beneficiaries at the Patel Pharmacies.

59.     RICHARD UTARNACHITT, M.D., was a physician licensed in the State of Michigan who prescribed drugs for Medicare, Medicaid, and private insurance beneficiaries that were purportedly filled at the Patel Pharmacies.

60.     RUBEN BENITO, M.D., was a physician licensed in the State of Michigan who prescribed drugs for Medicare, Medicaid, and private insurance beneficiaries that were purportedly filled at the Patel Pharmacies.

61.     CARL FOWLER, M.D., was a physician licensed in the State of Michigan who prescribed drugs for Medicare, Medicaid, and private insurance beneficiaries that were purportedly filled at the Patel Pharmacies. FOWLER also referred Medicare beneficiaries to the Patel Home Health Agencies, purportedly for the purpose of receiving home health care services.

62.     JAVAID BASHIR, M.D., was a physician licensed in the State of Michigan who prescribed drugs for Medicare, Medicaid, and private insurance beneficiaries that were purportedly filled at the Patel Pharmacies.

63.     RAJAT DANIEL, M.D., was a physician licensed in the State of Michigan who prescribed drugs for Medicare, Medicaid, and private insurance beneficiaries that were purportedly filled at the Patel Pharmacies. DANIEL also referred Medicare beneficiaries to the Patel Home Health Agencies, purportedly for the purpose of receiving home health care services.

64.     VINOD PATEL, a brother of Babubhai Patel, was an owner and operator of First Michigan Home Health Care.  VINOD PATEL also assisted Babubhai Patel in the operations of the Patel Pharmacies.

65.     ATUL PATEL was a business associate of VINOD PATEL and Babubhai Patel who assisted VINOD PATEL and Babubhai Patel in the operations of First Michigan Home Health Care and the Patel Pharmacies.

12

66.     ANTHONY MACKLIN, a.k.a. "Jimbo," was a patient recruiter, or "marketer," who recruited Medicare, Medicaid, and private insurance beneficiaries and induced those beneficiaries to have their prescriptions purportedly filled at the Patel Pharmacies.

67.     MICHAEL THORAN, a.k.a. "Ace," was a patient recruiter, or "marketer," who recruited Medicare, Medicaid, and private insurance beneficiaries and induced those beneficiaries to have their prescriptions purportedly filled at the Patel Pharmacies.

## COUNT 1

### (Health Care Fraud Conspiracy -- 18 U.S.C. § 1349)

**D-11 MITESHKUMAR PATEL**
**D-20 ANMY TRAN**
**D-21 MARK GREENBAIN**
**D-23 SANYANI EDWARDS**
**D-25 LEODIS ELLIOTT**
**D-27 MEHUL PATEL, R.Ph.**
**D-28 PRADEEP PANDYA, R.Ph.**
**D-29 VIKAS SHARMA, R.Ph.**
**D-30 MUKESH KHUNT, R.Ph.**
**D-31 RICHARD UTARNACHITT, M.D.**
**D-32 RUBEN BENITO, M.D.**
**D-33 CARL FOWLER, M.D.**
**D-34 JAVAID BASHIR, M.D.**
**D-35 RAJAT DANIEL, M.D.**
**D-36 VINOD PATEL**
**D-37 ATUL PATEL**
**D-38 ANTHONY MACKLIN**
**D-39 MICHAEL THORAN**

68.     Paragraphs 1 through 67 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

69.     From in or around January 2006, and continuing through in or around the present, the exact dates being unknown to the Grand Jury, at Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants MITESHKUMAR PATEL, ANMY TRAN, MARK

13

GREENBAIN, SANYANI EDWARDS, LEODIS ELLIOTT, MEHUL PATEL, PRADEEP

PANDYA, VIKAS SHARMA, MUKESH KHUNT, RICHARD UTARNACHITT, RUBEN

BENITO, CARL FOWLER, JAVAID BASHIR, RAJAT DANIEL, VINOD PATEL, ATUL

PATEL, ANTHONY MACKLIN, and MICHAEL THORAN did willfully, that is, with the

specific intent to further the object of the conspiracy, and knowingly combine, conspire,

confederate and agree with others, known and unknown to the Grand Jury, to violate Title 18,

United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined in Title 18, United States Code, Section

24(b), that is, Medicare, Medicaid, and private insurance plans, and to obtain, by means of

materially false and fraudulent pretenses, representations, and promises, money and property

owned by, and under the custody and control of, said health care benefit program, in connection

with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

70.    It was a purpose of the conspiracy for defendants MITESHKUMAR PATEL,

ANMY TRAN, MARK GREENBAIN, SANYANI EDWARDS, LEODIS ELLIOTT, MEHUL

PATEL, PRADEEP PANDYA, VIKAS SHARMA, MUKESH KHUNT, RICHARD

UTARNACHITT, RUBEN BENITO, CARL FOWLER, JAVAID BASHIR, RAJAT DANIEL,

VINOD PATEL, ATUL PATEL, ANTHONY MACKLIN, and MICHAEL THORAN  and

others to unlawfully enrich themselves by, among other things, (a) submitting false and

fraudulent claims to Medicare, Medicaid, and private insurers for prescription medication,

physician office visits, physician home visits, home health care services, and other services; (b)

offering and paying kickbacks and bribes to physicians, Medicare and Medicaid beneficiaries,

and other individuals for the purpose of arranging for the use of Medicare and Medicaid

14

beneficiary numbers by the conspirators as the bases of claims filed for prescription medication, home health care services, and other services; (c) soliciting and receiving kickbacks and bribes in return for arranging for the furnishing of services for which payment may be made by Medicare and Medicaid by providing Medicare and Medicaid beneficiary numbers, which formed the basis of claims filed for prescription medication, physician home visits, physician office visits, home health services, and other services; (d) concealing the submission of false and fraudulent claims to Medicare, Medicaid, and private insurers, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## **Manner and Means**

71.     The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

72.     Co-conspirator Babubhai Patel would acquire ownership and control of various Michigan pharmacies, including the Patel Pharmacies, and would conceal his ownership and control of many of those pharmacies through the use of straw owners.

73.     Co-conspirator Babubhai Patel, VINOD PATEL, and another co-conspirator would obtain ownership and control of First Michigan Home Health Care. Another co-conspirator would obtain ownership and control of Anrex Home Care and Anrex Personal Care.

74.     Co-conspirator Babubhai Patel and his associates would recruit pharmacists, including defendants MITESHKUMAR PATEL, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA, and MUKESH KHUNT, and employ these pharmacists at the Patel Pharmacies.

15

75.     Co-conspirator Babubhai Patel and his associates would offer and provide

kickbacks, bribes, and other inducements such as controlled substances to patient recruiters,

including defendants SANYANI EDWARDS, LEODIS ELLIOTT, ANTHONY MACKLIN

(a.k.a. "Jimbo") and MICHAEL THORAN (a.k.a. "Ace"), who would themselves offer and

provide kickbacks, bribes, and other inducements to Medicare, Medicaid, and private insurance

beneficiaries for the purpose of inducing those beneficiaries to present their prescriptions at one

of the Patel Pharmacies for billing.

76.     Co-conspirator Babubhai Patel and his associates, including VINOD PATEL and

ATUL PATEL, would offer and provide kickbacks, bribes, and other inducements to physicians

and podiatrists, including defendants ANMY TRAN, MARK GREENBAIN, RICHARD

UTARNACHITT, RUBEN BENITO, CARL FOWLER, JAVAID BASHIR, and RAJAT

DANIEL, for the purpose of inducing those physicians and podiatrists to write prescriptions for

medications for Medicare, Medicaid, and private insurance beneficiaries, and to write referrals of

Medicare beneficiaries to home health agencies, and to direct that those prescriptions or referrals

be presented to one of the Patel Pharmacies or Patel Home Health Agencies, so that the relevant

insurer could be billed.

77.     Defendants ANMY TRAN, MARK GREENBAIN, RICHARD UTARNACHITT,

RUBEN BENITO, CARL FOWLER, JAVAID BASHIR, and RAJAT DANIEL would write

prescriptions, home health referrals, and bill for services purportedly provided to Medicare,

Medicaid, and private insurance beneficiaries without regard to the medical necessity of those

prescriptions, referrals, and services.

78.     Defendants ANMY TRAN, MARK GREENBAIN, RICHARD UTARNACHITT, RUBEN BENITO, CARL FOWLER, JAVAID BASHIR, and RAJAT DANIEL would direct Medicare, Medicaid, and private insurance beneficiaries to present their prescriptions to one of the Patel pharmacies, so that the relevant insurer could be fraudulently billed, and would send home health referrals to the Patel Home Health Agencies, so that these entities could fraudulently bill Medicare for home health care services.

79.     Defendant pharmacists MITESHKUMAR PATEL, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA, and MUKESH KHUNT would bill Medicare, Medicaid, and private insurers for prescription medications which were medically unnecessary and never provided.

80.     Defendants SANYANI EDWARDS, VINOD PATEL, ATUL PATEL, and other co-conspirators would facilitate the objects of the conspiracy by, among other things, paying kickbacks and bribes to physicians and others in exchange for prescriptions and referrals to the Patel Pharmacies and Patel Home Health Agencies, recruiting physicians, beneficiaries, and patient recruiters into the scheme, and billing for home health care services that were medically unnecessary and never provided.

81.     Between January 2006 and the present, the Patel Pharmacies submitted claims to the Medicare program totaling not less than $37,770,557, purportedly for the purpose of seeking reimbursement for medications that were medically necessary and actually provided.

82.     Between January 2006 and the present, the Patel Pharmacies submitted claims to the Medicaid program totaling not less than $23,134,691, purportedly for the purpose of seeking reimbursement for medications that were medically necessary and actually provided.

17

83.     Between January 1, 2007 and the present, First Michigan Home Health Care would submit not less than $7,238,276 for home health services purportedly provided to Medicare beneficiaries. Between January 1, 2009 and the present, Anrex Home Care and Amrex Personal Care would submit not less than $2,806,539 for home health services purportedly provided to Medicare beneficiaries.

84.     The defendants transferred and disbursed, and caused the transfer and disbursement of, monies from Medicare, Medicaid, and private insurers to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2--10
### (Health Care Fraud, Aiding and Abetting – 18 U.S.C. §§ 1347 and 2)

**D-11 MITESHKUMAR PATEL, R.Ph.**
**D-27 MEHUL PATEL, R.Ph.**
**D-29 VIKAS SHARMA, R.Ph.**
**D-30 MUKESH KHUNT, R.Ph.**
**D-31 RICHARD UTARNACHITT, M.D.**

85.     Paragraphs 1 through 67 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

86.     From in or around January 2007, and continuing through in or around the present, the exact dates being unknown to the Grand Jury, at Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants, MITESHKUMAR PATEL, MEHUL PATEL, VIKAS SHARMA, MUKESH KHUNT, and RICHARD UTARNACHITT, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and private insurers, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, Medicaid, and private insurers, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Scheme and Artifice

87.     It was the purpose of the scheme and artifice for the defendants and their co-conspirators to unlawfully enrich themselves through the submission of false and fraudulent Medicare, Medicaid, and private insurance claims for medically unnecessary, and non-rendered, prescription medication and other services.

## The Scheme and Artifice

88.     Paragraphs 71 through 84 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution of the Scheme and Artifice

89.     On or about the dates specified as to each count below, at Wayne County, in the

Eastern District of Michigan, and elsewhere, the defendants, specifically identified as to each

count below, in connection with the delivery of and payment for health care benefits, items and

services, specifically, prescription medication, did knowingly and willfully execute, and attempt

to execute, the above-described scheme and artifice to defraud a health care benefit program

affecting commerce, that is, Medicare or Medicaid, and to obtain, by means of materially false

and fraudulent pretenses, representations, and promises, money and property owned by, and

under the custody and control of said health care benefit programs:

| Count | Defendant(s) | Insurance program | Beneficiary | Date of purported service | Description of Medication or Service |
|---|---|---|---|---|---|
| 2 | D-11 MITESHKUMAR PATEL | Medicaid | L.W. | 08/04/10 | Indomethacin, 60 units |
| 3 | D-11 MITESHKUMAR PATEL | Medicare | D.N. | 08/04/10 | Cymbalta, 30 units |
| 4 | D-27 MEHUL PATEL | Medicaid | J.H. | 09/14/09 | Zyprexa, 90 units |
| 5 | D-27 MEHUL PATEL | Medicare | F.W. | 09/14/09 | Seroquel, 60 units |
| 6 | D-29 VIKAS SHARMA | Medicare | C.H. | 09/16/09 | Seroquel, 30 units |
| 7 | D-30 MUKESH KHUNT | Medicaid | R.R. | 10/11/10 | Cymbalta, 30 units |
| 8 | D-30 MUKESH KHUNT | Medicaid | T.D. | 10/13/10 | Seroquel, 30 units |
| 9 | D-31 RICHARD UTARNACHITT | Medicare | I.C. | 05/31/11 | Office Outpatient Visit, CPT Code 99214 |
| 10 | D-31 RICHARD UTARNACHITT | Medicare | I.C. | 06/29/11 | Office Outpatient Visit, CPT Code 99214 |

20

## COUNT 11
### (Conspiracy to Distribute Controlled Substances, 21 U.S.C. § 846)

**D-11 MITESHKUMAR PATEL**
**D-20 ANMY TRAN**
**D-21 MARK GREENBAIN**
**D-23 SANYANI EDWARDS**
**D-25 LEODIS ELLIOTT**
**D-27 MEHUL PATEL, R.Ph.**
**D-28 PRADEEP PANDYA, R.Ph.**
**D-29 VIKAS SHARMA, R.Ph.**
**D-30 MUKESH KHUNT, R.Ph.**
**D-31 RICHARD UTARNACHITT, M.D.**
**D-32 RUBEN BENITO, M.D.**
**D-33 CARL FOWLER, M.D.**
**D-38 ANTHONY MACKLIN**
**D-39 MICHAEL THORAN**

90.    Paragraphs 1 through 67 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

91.    Beginning on or about January, 2009, and continuing up to and including the present, at Wayne County, in the Eastern District of Michigan, and elsewhere, defendants MITESHKUMAR PATEL, ANMY TRAN, MARK GREENBAIN, SANYANI EDWARDS, LEODIS ELLIOTT, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA, MUKESH KHUNT, RICHARD UTARNACHITT, RUBEN BENITO, CARL FOWLER, ANTHONY MACKLIN, and MICHAEL THORAN , did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other, as well as other persons not named in this Indictment, to commit offenses against the United States, that is, to knowingly, intentionally and unlawfully distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), including but not limited to, the Schedule II controlled substances oxycodone (OxyContin) and oxymorphone

21

(Opana and Opana ER), the Schedule III controlled substance hydrocodone (Vicodin, lortab,

APAP) , the Schedule IV controlled substance alprazolam (Xanax), and the Schedule V

controlled substance cough syrup with codeine (Prometh/Phenergan).  These prescription drug

controlled substances were distributed outside the course of usual medical practice and for no

legitimate medical purpose, all in violation of Title 21, United States Code, Sections 846,

841(a)(1).

## Purpose of the Conspiracy

92.     It was a purpose of the conspiracy for defendants MITESHKUMAR PATEL,

ANMY TRAN, MARK GREENBAIN, SANYANI EDWARDS, LEODIS ELLIOTT, MEHUL

PATEL, PRADEEP PANDYA, VIKAS SHARMA, MUKESH KHUNT, RICHARD

UTARNACHITT, RUBEN BENITO, CARL FOWLER,  ANTHONY MACKLIN, and

MICHAEL THORAN and others to unlawfully enrich themselves by, among other things, (a)

distributing controlled substances without a legitimate medical purpose in order to facilitate the

submission of false and fraudulent claims to Medicare, Medicaid, and private insurers for

prescription medication, home health care services, physician office visits, physician home visits,

and other services; (b) offering and paying kickbacks and bribes in the form of controlled

substances to Medicare, Medicaid, and private insurance beneficiaries and patient recruiters for

the purpose of such beneficiaries and recruiters arranging for the use of beneficiary numbers by

the conspirators as the bases of claims filed for prescription medication, home health services,

and other services; (c) soliciting and receiving kickbacks in the form of controlled substances in

return for arranging for the furnishing of services for which payment may be made by Medicare,

Medicaid, and private insurers by providing their beneficiary numbers, which formed the basis of

claims filed for prescription medication, physician home visits, physician office visits, home

health services, and other services; (d) concealing the submission of false and fraudulent claims to Medicare, Medicaid, and private insurers, the receipt and transfer of the proceeds from the fraud, the distribution of controlled substances without medical justification, and the payment of kickbacks; and (e) diverting proceeds of the fraud and the distribution of controlled substances for the personal use and benefit of the defendants and their co-conspirators.

**Manner and Means**

93.    The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

94.    Co-conspirator Babubhai Patel would acquire ownership and control of various Michigan pharmacies, including the Patel Pharmacies, and would conceal his ownership and control of many of those pharmacies through the use of straw owners.

95.    Co-conspirator Babubhai Patel and his associates would recruit pharmacists, including MITESHKUMAR PATEL, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA and MUKESH KHUNT, and employ these pharmacists at the Patel Pharmacies.

96.    Co-conspirator Babubhai Patel and his pharmacists, including defendants MITESHKUMAR PATEL, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA and MUKESH KHUNT, would obtain and maintain authorization from the Drug Enforcement Administration (DEA) to dispense controlled substances at the Patel Pharmacies when those controlled substances were medically necessary and prescribed by a physician.

97.    Co-defendant Babubhai Patel and his associates, including MITESHKUMAR PATEL, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA and MUKESH KHUNT, would obtain and possess controlled substances, including the Schedule II drug OxyContin (oxycodone), the Schedule III drugs Viccodin, Viccodin ES, Lortab (hydrocodone bitartrate), the

Schedule IV drug Xanax (Alprazolam), and the Schedule V drug cough syrup with codeine (Prometh/Phenergan), purportedly for the purpose of dispensing those medications at the Patel Pharmacies in accordance with legitimate pharmaceutical practice.

98.    Co-conspirator Babubhai Patel and his associates would recruit patient recruiters, including defendants SANYANI EDWARDS, LEODIS ELLIOTT, ANTHONY MACKLIN, and MICHAEL THORAN, who would offer and provide kickbacks, bribes, and other inducements to Medicare, Medicaid, and private insurance beneficiaries for the purpose of inducing those beneficiaries to present their prescriptions at one of the Patel Pharmacies for billing.

99.    Co-conspirator Babubhai Patel and his associates would offer and provide kickbacks, bribes, and other inducements to physicians and podiatrists, including ANMY TRAN, MARK GREENBAIN, RICHARD UTARNACHITT, RUBEN BENITO, and CARL FOWLER, for the purpose of inducing those physicians to write prescriptions for controlled medications for Medicare, Medicaid, and private insurance beneficiaries, and to direct that those prescriptions be presented to one of the Patel Pharmacies, where the controlled substances could be dispensed without regard to medical necessity.

100.    Defendants ANMY TRAN, MARK GREENBAIN, RICHARD UTARNACHITT, RUBEN BENITO, and CARL FOWLER, would write prescriptions for controlled medications for Medicare, Medicaid, and private insurance beneficiaries, without medical justification.

101.    Defendants ANMY TRAN, MARK GREENBAIN, RICHARD UTARNACHITT, RUBEN BENITO, and CARL FOWLER would direct Medicare, Medicaid, and private insurance beneficiaries to present their controlled prescriptions to one of the Patel pharmacies, so that the prescriptions could be dispensed without regard to medical necessity.

24

102.    Co-defendant Babubhai Patel and defendant pharmacists MITESHKUMAR

PATEL, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA and MUKESH KHUNT

would dispense controlled substances to Medicare, Medicaid, and private insurance beneficiaries

without medical necessity.

103.    Co-conspirator Babubhai Patel and his associates, including MITESHKUMAR

PATEL, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA and MUKESH KHUNT,

would distribute controlled substances without medical justification to patient recruiters,

including LEODIS ELLIOTT, ANTHONY MACKLIN, and MICAHEL THORAN, as a

kickback for the patients those recruiters provided to the Patel Pharmacies.

104.    Between January 2009 and the present, the Patel Pharmacies distributed not less

than 250,000 doses of the Schedule II controlled substances Oxycodone (OxyContin) and

Oxymorphone (Opana and Opana ER); not less than 4,200,000 doses of the Schedule III

controlled substance Hydrocodone (Vicodin, lortab, APAP), not less than 1,500,000 doses of

Schedule IV controlled substance Alprazolam (Xanax), and not less than 6,100 pint bottles of the

Schedule V controlled substance codeine cough syrup.

All in violation of 21 U.S.C. § 846.

### COUNTS 12-20
**(Distribution of Controlled Substances, Aiding and Abetting,**
**(21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2)**

**D-11 MITESHKUMAR PATEL**
**D-27 MEHUL PATEL, R.Ph.**
**D-29 VIKAS SHARMA, R.Ph.**
**D-30 MUKESH KHUNT, R.Ph.**
**D-31 RICHARD UTARNACHITT, M.D.**

105.    Paragraphs 1 through 67 of the General Allegations section of this Indictment, and paragraphs 93-104 of Count 11 of this Indictment, are realleged and incorporated by reference as though fully set forth herein.

106.    On or about the dates specified below, as to the defendants specified in each count below, the defendant did knowingly, intentionally, and unlawfully distribute a controlled substance and aid and abet in that offfense, as described below, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Defendant(s) | Purported Recipient | Distribution Date | Description of Controlled Substance |
|-------|--------------|---------------------|-------------------|-------------------------------------|
| 12 | D-11 MITESHKUMAR PATEL | L.W. | 08/04/10 | Hydrocodone, 90 units |
| 13 | D-11 MITESHKUMAR PATEL | D.N. | 08/04/10 | Hydrocodone, 90 units |
| 14 | D-27 MEHUL PATEL | J.H. | 09/14/09 | Hydrocodone, 100 units |
| 15 | D-27 MEHUL PATEL | F.W. | 09/14/09 | Hydrocodone, 90 units |
| 16 | D-29 VIKAS SHARMA | C.H | 09/15/09 | Hydrocodone, 90 units |
| 17 | D-30 MUKESH KHUNT | R.R. | 10/11/10 | Hydrocodone, 90 units |
| 18 | D-30 MUKESH KHUNT | T.D. | 10/13/10 | Hydrocodone, 90 units |
| 19 | D-31 RICHARD UTARNACHITT | I.C. | 05/31/11 | Hydrocodone, 120 units |
| 20 | D-31 RICHARD UTARNACHITT | I.C. | 06/29/11 | Hydrocodone, 120 units |

26

## COUNT 21
### (Conspiracy to Pay and Receive Health Care Kickbacks)
### (18 U.S.C. § 371)

107.     Paragraphs 1 through 67 of the General Allegations section of this Indictment are

realleged and incorporated by reference as if fully set forth herein.

108.     From in or around January, 2006 through in or around the present, the exact dates

being unknown to the Grand Jury, at Wayne County, in the Eastern District of Michigan,

and elsewhere, defendants MITESHKUMAR PATEL,  ANMY TRAN, MARK

GREENBAIN, SANYANI EDWARDS, LEODIS ELLIOTT, MEHUL PATEL,

PRADEEP PANDYA, VIKAS SHARMA, MUKESH KHUNT, RICHARD

UTARNACHITT, RUBEN BENITO, CARL FOWLER, JAVAID BASHIR, RAJAT

DANIEL, VINOD PATEL, ATUL PATEL, ANTHONY MACKLIN, and MICHAEL

THORAN  and other co-conspirators did willfully and knowingly combine, conspire,

confederate and agree with others known and unknown to the Grand Jury to commit

certain offenses against the United States, that is, to violate Title 42, United States Code,

Section 1320a-7b(b) by:

   a.   knowingly and willfully soliciting and receiving remuneration, specifically, cash

       kickbacks, bribes, controlled substances, and other inducements, directly and

       indirectly, overtly and covertly, in return for referring individuals for the

       furnishing of any item or service for which payment may be made by Medicare or

       Medicaid; and

   b.   knowingly and willfully paying and offering remuneration, specifically, cash

       kickbacks, bribes, controlled substances, and other inducements, directly and

27

indirectly, overtly and covertly, to refer individuals for the furnishing of any item

or service for which payment may be made by Medicare or Medicaid.

## Purpose of the Conspiracy

109. It was the purpose of the conspiracy for MITESHKUMAR PATEL, ANMY

TRAN, MARK GREENBAIN, SANYANI EDWARDS, LEODIS ELLIOTT, MEHUL

PATEL, PRADEEP PANDYA, VIKAS SHARMA, MUKESH KHUNT, RICHARD

UTARNACHITT, RUBEN BENITO, CARL FOWLER, JAVAID BASHIR, RAJAT

DANIEL, VINOD PATEL, ATUL PATEL, ANTHONY MACKLIN, and MICHAEL

THORAN and their co-conspirators to unlawfully enrich themselves by, among other

things, paying and disbursing kickbacks and bribes to physicians and others in return for

those physicians and others referring individuals for the ordering of home health care

services and pharmaceutical services, for which payment may be made by Medicare or

Medicaid, and by soliciting and receiving kickbacks and bribes in exchange for referring

individuals for the ordering of home health care services and pharmaceutical services, for

which payment may be made by Medicare or Medicaid.

## Manner and Means

110. The manner and means by MITESHKUMAR PATEL, ANMY TRAN, MARK

GREENBAIN, SANYANI EDWARDS, LEODIS ELLIOTT, MEHUL PATEL,

PRADEEP PANDYA, VIKAS SHARMA, MUKESH KHUNT, RICHARD

UTARNACHITT, RUBEN BENITO, CARL FOWLER, JAVAID BASHIR, RAJAT

DANIEL, VINOD PATEL, ATUL PATEL, ANTHONY MACKLIN, and MICHAEL

THORAN and their co-conspirators sought to accomplish the purpose of the conspiracy

included, among other things, the following:

28

111.   Co-conspirator Babubhai Patel would obtain ownership and control over numerous pharmacies in the Eastern District of Michigan, including the Patel Pharmacies.

112.   Co-conspirator Babubhai Patel, VINOD PATEL and other co-conspirators would obtain ownership and control of the Patel Home Health Agencies.

113.   Co-conspirator Babubhai Patel, VINOD PATEL, ATUL PATEL, SANYANI EDWARDS, ANTHONY MACKLIN, MICHAEL THORAN, and others would identify physicians, patient recruiters, patients, and other referral sources willing to accept cash kickbacks, bribes, and other inducements in exchange for referring, among others, Medicare and Medicaid beneficiaries to the Patel Pharmacies and Patel Home Health Agencies.

114.   Co-conspirator Babubhai Patel, VINOD PATEL, ATUL PATEL, SANYANI EDWARDS, ANTHONY MACKLIN, MICHAEL THORAN and others would offer and pay kickbacks, bribes, and other inducements to physicians, patient recruiters, patients, and other referral sources in exchange for their referrals of, among others, Medicare and Medicaid patients to the Patel Pharmacies and Patel Home Health Agencies.

115.   Defendants ANMY TRAN, MARK GREENBAIN, SANYANI EDWARDS, LEODIS ELLIOTT, RICHARD UTARNACHITT, RUBEN BENITO, CARL FOWLER, JAVAID BASHIR, RAJAT DANIEL, ANTHONY MACKLIN, and MICHAEL THORAN would accept kickbacks, bribes, controlled substances, and other inducements in exchange for referring Medicare and Medicaid beneficiaries to the Patel Pharmacies and Patel Home Health Agencies.

116.    Co-Conspirator Babubhai Patel, MITESHKUMAR PATEL, MEHUL PATEL, PRADEEP PANDYA, VIKAS SHARMA, MUKESH KHUNT, VINOD PATEL, and others would bill the Medicare and Medicaid programs for services purportedly provided to Medicare and Medicaid beneficiaries at the Patel Pharmacies and Patel Home Health Agencies, despite knowing that the referrals of those beneficiaries were induced in whole or in part by the payment of cash kickbacks, bribes, controlled substances, and other remuneration.

## Overt Acts

117.    In furtherance of the conspiracy, and to accomplish its purpose and object, at least one of the conspirators committed, or caused to be committed, at Wayne County, in the Eastern District of Michigan, and elsewhere, the following overt acts, among others:

118.    On or about March 16, 2011, a co-conspirator approached RAJAT DANIEL and offered to provide RAJAT DANIEL with remuneration in exchange for approximately 1500-2000 prescriptions to be filled monthly at a Patel Pharmacy.

119.    On or about April 21, 2011, RAJAT DANIEL referred two patients to Anrex Home Care, Inc., and agreed to begin sending prescriptions to one of the Patel Pharmacies.

120.    On or about June 29, 2011, RAJAT DANIEL received cash in an envelope from a co-conspirator, in exchange for his referrals of business to the Patel Pharmacies and the Patel Home Health Agencies.

121.    On or about January 17, 2011, JAVAID BASHIR was paid $4,000 cash by a co-conspirator in exchange for his referrals of prescriptions, including prescriptions reimbursable by Medicare and Medicaid, to one of the Patel Pharmacies.

30

122.     On or about August 4, 2010, a marketer was directly or indirectly given controlled substances by MITESHKUMAR PATEL in exchange for that marketer bringing prescriptions, including Medicare prescriptions, into a Patel Pharmacy for billing.

123.     On or about September 14, 2009, a marketer was directly or indirectly given controlled substances by MEHUL PATEL in exchange for that marketer bringing prescriptions, including Medicaid prescriptions, into a Patel Pharmacy for billing.

124.     On or about September 15, 2009, a marketer was directly or indirectly given controlled substances by VIKAS SHARMA in exchange for that marketer bringing prescriptions, including Medicare prescriptions, into a Patel Pharmacy for billing.

125.     On or about August 11, 2010, a marketer was directly or indirectly given controlled substances by MUKESH KHUNT in exchange for that marketer bringing prescriptions, including Medicaid prescriptions, into a Patel Pharmacy for billing.

126.     On or about August 13, 2010, a marketer was directly or indirectly given controlled substances by MUKESH KHUNT in exchange for bringing prescriptions into a Patel Pharmacy.

All in violation of Title 18, United States Code, Section 371.

**CRIMINAL FORFEITURE**
**(21 U.S.C. § 853, 18 U.S.C. § 982)**

**D-11 MITESHKUMAR PATEL**
**D-20 ANMY TRAN**
**D-21 MARK GREENBAIN**
**D-23 SANYANI EDWARDS**
**D-25 LEODIS ELLIOTT**
**D-27 MEHUL PATEL, R.Ph.**
**D-28 PRADEEP PANDYA, R.Ph.**
**D-29 VIKAS SHARMA, R.Ph.**
**D-30 MUKESH KHUNT, R.Ph.**

31

**D-31 RICHARD UTARNACHITT, M.D.**
**D-32 RUBEN BENITO, M.D.**
**D-33 CARL FOWLER, M.D.**
**D-34 JAVAID BASHIR, M.D.**
**D-35 RAJAT DANIEL, M.D.**
**D-36 VINOD PATEL**
**D-37 ATUL PATEL**
**D-38 ANTHONY MACKLIN,**
**D-39 MICHAEL THORAN**

127.    The allegations contained in Counts 1-34 of this Indictment are hereby incorporated by reference for the purpose of alleging forfeiture against the defendants pursuant to the provisions of Title 21, United States Code, Section 853;  Title 18, United States Code, Sections 981(a)(1)(C) and 982; and Title 28, United States Code, Section 2461.

128.    As a result of the foregoing violations of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Sections 1347 and 1349, as charged in Counts 1-34 of this Indictment, defendants shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations; (b) any property involved in said violations, or any property traceable to such property; and (c) any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations.

129.    Such property includes, but is not limited to, a money judgment, and all traceable interest and proceeds for which the defendants are jointly and severally liable.  Such sum in aggregate is property representing the proceeds of the aforementioned offenses, or is traceable to such property, and/or is involved in violations of Title 21, United States Code, Sections 841 and 846 and Title 18, United States Code, Sections 1347 and 1349.

32

130.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title

18, United States Code, Section 982(b), defendants shall forfeit substitute property, up to the

value of the properties described above or identified in any subsequent forfeiture bills of

particular, if, by any act or omission of the defendant, the property cannot be located upon the

exercise of due diligence; has been transferred, sold to or deposited with a third party; has been

placed beyond the jurisdiction of the court; has been substantially diminished in value; or has

been commingled with other property which cannot be divided without difficulty.

THIS IS A TRUE BILL

s/Grand Jury Foreperson

2-7-13

BARBARA L. McQUADE
UNITED STATES ATTORNEY


s/WAYNE F. PRATT
CHIEF, HEALTH CARE FRAUD UNIT
ASSISTANT UNITED STATES ATTORNEY
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
(313) 226-9583
Wayne.pratt@usdoj.gov
P32528


s/JOHN K. NEAL
ASSISTANT UNITED STATES ATTORNEY
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
(313) 226-9644
John.Neal@usdoj.gov

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet ~~ORIGINAL~~ Case Number 11-cr-20468 |
|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   [   ]

| **Companion Case Information** | Companion Case Number:  N/A |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned:  N/A |
| ☐ Yes    ☒ No | AUSA's Initials:  JKN |

Case Title: USA v.          PATEL, et. al.

County where offense occurred :          Wayne

Check One:          ☒ **Felony**          ☐ **Misdemeanor**          ☐ **Petty**

_____Indictment/_____Information --- **no** prior complaint.
_____Indictment/_____Information --- based upon prior complaint [Case number: _____]
_____Indictment/_____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

Superseding to Case No:  __11-CR-20468__          Judge:  __Arthur J. Tarnow__
☐   Original case was terminated; no additional charges or defendants.
☐   Corrects errors; no additional charges or defendants.
☐   Involves, for plea purposes, different charges or adds counts.
☒   Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| D-11 MITESHKUMAR PATEL, R.Ph. | 18 U.S.C. § 1349 | |
| D-20 ANMY TRAN, D.P.M. | 18 U.S.C. § 1347 | |
| D-21 MARK GREENBAIN, M.D. | 21 U.S.C. § 846 | |
| D-23 SANYANI EDWARDS | 21 U.S.C. § 841(a)(1) | |
| D-25 LEODIS ELLIOTT | 18 U.S.C. § 2 | |
| D-27 MEHUL PATEL, R.Ph. | 18 U.S.C. § 371 | |
| D-28 PRADEEP PANDYA, R.Ph. | 18 U.S.C. § 982 | |
| D-29 VIKAS SHARMA, R.Ph. | 21 U.S.C. § 853 | |
| D-30 MUKESH KHUNT, R.Ph. | | |
| D-31 RICHARD UTARNACHITT, M.D. | | |
| D-32 RUBEN BENITO, M.D. | | |
| D-33 CARL FOWLER, M.D. | | |
| D-34 JAVAID BASHIR, M.D. | | |
| D-35 RAJAT DANIEL, M.D. | | |
| D-36 VINOD PATEL | | |
| D-37 ATUL PATEL | | |
| D-38 ANTHONY MACKLIN, a.k.a. "Jimbo" | | |
| D-39 MICHAEL THORAN, a.k.a. "Ace" | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

__February 7, 2013__
Date

John K. Neal
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:  (313) 226-9644
Fax: (313) 226-2621
E-Mail address: john.neal@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09