UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                              CRIM. NO. 11-CR-20468

            Plaintiff,

                              HON. ARTHUR TARNOW

v.

D-20 ANMY TRAN, D.P.M.,
D-23 SANYANI EDWARDS,

                Defendants.

_____/

**OPPOSITION TO DEFENDANTS' MOTIONS FOR NEW TRIALS AND TO DEFENDANT ANMY TRAN'S MOTION FOR A JUDGMENT OF ACQUITTAL**

      The United States of America, by and through its attorneys, hereby opposes the Motion of Defendant Anmy Tran for a Judgment of Acquittal, and defendants' Tran and Sanyani Edwards Motions for New Trials. Defendant Tran's Rule 29 Motion makes no reference to the wiretap calls, her confession, and only the most passing reference to the testimony of cooperators, thereby effectively ignoring most of the evidence the government introduced in its case-in-chief. When that evidence is in fact considered, the government's proofs were more than sufficient

to enable a reasonable jury to convict defendant Tran.  Likewise, both defendant

Tran and defendant Edwards' Motions for a New trial fall well short of the

applicable legal standards for granting such motions, and should be denied as well

by this Court.

**A.     Anmy Tran's Motion for a Judgment of Acquittal**

Tran first moves the Court for a judgment of acquittal under Rule 29 of the

Federal Rules of Criminal Procedure, arguing that the government failed to present

sufficient evidence for a reasonable jury to convict her on any of the three counts

of conviction.  Pursuant to Rule 29(c)(2) of the Federal Rules of Criminal

Procedure, a trial court may set aside a jury conviction only if a reasonable trier of

fact could not fairly find the defendant guilty, viewing the evidence in a light most

favorable to the government.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979);

United States v. Conaster, 514 F.3d 508, 518 (6th Cir. 2008).  Defendants "bear a

heavy burden when asserting insufficiency of the evidence arguments." United

States v. Wettstain, 618 F.3d 577, 583 (6th Cir. 2010).  "Circumstantial evidence

alone is sufficient to sustain a conviction, and such evidence need not remove

every reasonable hypothesis except that of guilt." United States v. Spearman,  186

F.3d 743, 746 (6th Cir. 1999) (cited in Wettstain, 618 F.3d at 583).  In the Rule 29

context, "the court must refrain from independently judging the credibility of witnesses or weight of the evidence." United States v. Donaldson, 52 Fed. Appx. 700, 706 (6th Cir. 2002). The granting of judgments of acquittal should be limited to cases where "the prosecution's failure is clear." Id. (internal quotation marks and citation omitted). For a reviewing court, "All reasonable inferences must be drawn in favor of the jury's verdict." Conaster, 514 F.3d at 518.

In the instant case, defendant Tran argues that the evidence presented by the government was insufficient to convict her on all three of the conspiracies with which she was charged. The elements of the offenses, as agreed to by the defendants (including Tran) in the jury instructions used in this case, are set forth as Attachment A to this Opposition. The key commonality among all three offenses is the element of agreement – specifically, that defendant Tran agreed with at least one other person to commit the offenses of health care fraud, distribution of controlled substances, and to pay or receive health care kickbacks. The government's evidence on each of these points was substantial, and encompassed, at a minimum, the following:

•      Tran agreed with Babubhai Patel to write prescriptions based upon

        Babubhai Patel's financial interests, not based upon the best needs of her

3

patients.  Pharmacists Pinakeen Patel and Ashwini Sharma both testified that Tran would write the same cocktail of prescriptions for virtually every patient, a combination of drugs that was very profitable for the Patel Pharmacies.  The pharmacists, knowing the fraudulent nature of the prescriptions, would only dispense half of the expensive medications.  Both Pinakeen Patel and Ashwini Sharma reported that Tran's patients complained about the volume of non-controlled drugs that they did receive, as dispensing even half of the expensive, non-controlled medication Tran prescribed was too much.  Pinakeen Patel and Ashwini Sharma also testified that Tran would switch medications to a more profitable one whenever they asked, further demonstrating her unwillingness to exercise legitimate medical judgment when that judgment conflicted with Babubhai Patel's financial interests.

- Tran's agreement with Babubhai Patel to write fraudulent prescriptions was made clear in intercepted phone calls, none of which were addressed by Tran in her Motion. Government Exhibit 3A is an excellent example of the criminal nature of Tran's relationship with Patel.  In that call, Patel discussed another physician Tran had helped recruit into the organization

4

(Anjali Kumar), and said that he would sit down with Kumar and "discuss the good medication and stuff like that." Tran responded, Ok. You mean good medication from my end or from Dr. Kumar?" To which Patel responded, "Kumar end. Your end is perfect." GX 3A, pp. 1-2. Why would Babubhai Patel be instructing a medical professional on "the good medication," and assuring Tran that when it came to writing medication, her end was "perfect?" The most credible answer is that Patel and Tran had an agreement that Tran was to write medications in a manner that profited Patel, and Patel was assuring her that she was living up to her end of the bargain. This is only one example of multiple intercepted calls, introduced at trial, from which the jury could infer that Tran had agreed to support Babubhai Patel and the criminal goals of his organization.

- Tran's prescription patterns were highly unusual for a podiatrist, and, during the core time period of the conspiracy, her total Medicare drug costs, cost per patient, and costs for certain specific drugs at issue in the case were many times those of any other podiatrists in the State of Michigan. This evidence, introduced at trial as government exhibit 28, corroborated the contention of the cooperators and the evidence from the calls -- namely, that

5

Babubhai Patel was demanding that Tran write a high volume of prescriptions for expensive, non-controlled drugs, and that she was doing so. The jury could certainly infer that her prescription patterns indicated that she was living up to her end of the bargain.

- Tran accepted kickbacks from Babubhai Patel in a variety of forms, and the government presented substantial evidence of this at trial. Patel paid for the down payment on the building that hosted her practice; he also paid the property taxes on the building in 2010, and was found with the tax bill for 2011 on his person when arrested. Patel furthermore made numerous donations to a Vietnamese-American charity with which Tran was affiliated, and on one occasion wrote a $10,000 check to an intermediary, who promptly deposited the check and wrote another check in the same amount to Tran. In addition to these payments from Babubhai Patel, government witness Ramesh Patel testified that he personally gave Tran cash in envelopes on several occasions in order to obtain referrals to a home health agency partially owned by Babubhai Patel. Services provided to those patients were then billed to the Medicare program.

- Tran confessed. This is another point not mentioned by Tran in her Motion.

6

When interviewed the day of her arrest, Tran acknowledged receiving
$50,000 from Patel for the down payment on the building in which her
practice was located, and that Patel had paid her property tax bill in the past.
Tran then stated that in exchange, Babubhai Patel would tell her what
medications to write, based on what was profitable for Patel. She
understood that as long as she continued sending profitable prescriptions to
Highland Park Pharmacy, she had no obligation to pay the $50,000 back.
All of this was described by Special Agent Michael Celano during the
government's case-in-chief.

- Ashwini Sharma and Pinakeen Patel testified that the patients that came to
see Tran were virtually all prescribed Vicodin and other controlled
substances, and those drugs were what the patients consistently wanted and
demanded, as opposed to the non-controlled medication Tran was writing in
bulk. This heavy controlled prescription pattern was borne out by the
Medicare and MAPS data, which showed large volumes of controlled
substances being prescribed to virtually every patient. The government's
expert, Dr. Drake, testified that the quantity of controlled substances coming
from Tran would raise red flags for him as a pharmacist in deciding whether

to fill the prescriptions.  Furthermore, the patient files introduced during the government's case-in-chief showed warnings from insurers and from MAPS that patients were being prescribed controlled substances by multiple providers. These warnings were apparently ignored.  Drug testing of the patients did not begin until after the indictment in this case; that testing showed, in multiple instances, that patients were not taking the controlled substances prescribed, leading to the natural inference that these were being sold or otherwise distributed illegally.

This non-comprehensive list of facts, and the inferences that flow naturally from these facts, are more than sufficient to enable a reasonable jury to convict Tran of all three conspiracies.  Tran took substantial money from Babubhai Patel and his co-conspirators, and earned her kickbacks by writing prescriptions based on Patel's financial interests, regardless of medical necessity.  She also wrote controlled substance prescriptions outside the course of legitimate medical practice to maintain her base of patients, so that she and Patel could continue to profit.  Tran's Rule 29 motion should be denied, as the convictions in this case are amply supported by the evidence presented.

**B.    Anmy Tran's Motion for a New Trial.**

Tran also moves this Court for a new trial pursuant to Rule 33, arguing that a new trial is necessary to prevent a "manifest injustice."  She argues that the weight of the evidence heavily preponderates in favor of the defendant, and that the Court's admission of the government expert witnesses' testimony was improper and worked a manifest injustice that infected the entire trial.

A motion for a new trial is granted "only in the extraordinary circumstance where the evidence preponderates heavily against the verdict."  United States v. Hughes, 505 F. 3d 578, 592 (6th Cir. 2007).   When examining a district court's denial of such a motion, an appellate court's  review is "limited to examining the evidence produced at trial to determine whether the district court's determination that the evidence does not preponderate heavily against the verdict is a clear and manifest abuse of discretion."  United States v. Ashworth, 836 F.2d 260, 266 (6th Cir.1988).

As set forth above, the evidence preponderates heavily in favor of the precise verdict the jury reached.  The testimony of co-conspirators, the intercepted telephone calls, the Medicare and MAPS data, and Tran's confession all provided a substantial foundation upon which as rational jury could, and did, base its verdict.

9

Furthermore, the specific alleged deficiency complained of, the testimony of the government's expert, was properly admitted and in no way a violation of the Rules of Evidence or otherwise unfairly prejudicial to Tran. William Drake, Pharm. D., testified first about the professional obligations and responsibilities of a pharmacist in practice. In that context, he discussed the pharmacists' obligation to validate a prescription; *i.e.*, to ensure that it was written by an authorized prescriber in the legitimate course of professional practice. He also discussed the role of the pharmacist as part of the patient's treatment team, and the need for the pharmacist to work with doctor and the patient to ensure that there are no adverse drug interactions or other specific concerns with prescribed medications. Dr. Drake testified clearly that there is no requirement that pharmacists fill any prescription presented to them. Indeed, he stated that pharmacists should do so only after they exercise their concurrent professional judgment to ensure that the prescription is valid and appropriately written as part of a physician's legitimate medical practice.

From this foundation, Dr. Drake testified about specific issues with prescriptions that, in his opinion, would raise "red flags" for a pharmacist in fulfilling his or her professional obligations and would cause him to question the

10

validity of the prescription. This testimony included a discussion of particular uses and functions of certain medications, both controlled and non-controlled, and the circumstances under which prescriptions for these medications would raise "red flags" for a pharmacist. He also discussed his understanding of the propriety of certain financial relationships between physicians and pharmacists, and what sorts of relationships would cause him ethical or legal concerns as a pharmacist.

All of this testimony is well within the scope of Dr. Drake's expertise as a pharmacist, and was properly admitted. Dr. Drake did not go beyond these topics in his testimony. Contrary to the suggestions in Tran's Motion, Dr. Drake never testified as to the medical necessity of any specific prescription, and never opined on the propriety of the diagnosis or treatment plan for any patient. Nothing in Dr. Drake's testimony went outside of his opinions as a qualified pharmacist testifying about pharmacists' obligations in assessing and filling valid prescriptions.

Indeed, at the trial in this case, defense counsel for Tran went to great lengths to illustrate for the jury the limits of Dr. Drake's expertise. The cross examination pointed out repeatedly that Drake had not reviewed patient charts, had no qualifications as a physician, and was unable to opine on the medical necessity of any particular prescription at issue in this case. Tran's decision to

11

complain now that Dr. Drake did in fact opine on these things, and those opinions

so prejudiced the defense that a new trial is warranted, simply bear little

resemblance to the actual trial of this case or the testimony that Dr. Drake offered.

Tran's Motion for a New Trial should be denied.

**C.**    **Sanyani Edwards'  Motion for a New Trial**

Sanyani Edwards moves this Court for a new trial, arguing both that the

verdict was both contrary to the manifest weight of the evidence and that there is

newly discovered evidence which so undermines the verdict that a new trial is

required.  We address these arguments in turn.

First, the evidence incriminating Sanyani Edwards was nothing short of

overwhelming, and the manifest weight of the evidence preponderates heavily on

the side of the jury's verdict.  The intercepted calls alone provide exceptionally

compelling evidence of his guilt.   For example, in an intercepted call between

Babubhai Patel and Sanyani Edwards, Patel complained that Mark Greenbain, a

physician to whom Patel was paying kickbacks, had not shown up at a clinic to

write prescriptions on a particular day.  Edwards stated that it was better for Patel

when Greenbain was not there, noting "When he's not there, I can put anything on

the script that needs to be there, anything . . . so it's more better when he's not

12

there because I can make the script whatever it is it needs to be. Which means you're going to make more money." GX 1A, pp. 1-2.  Edwards had no authority to write prescriptions -- he was obviously talking about falsifying prescriptions for Greenbain's later signature.  In another intercepted call, Edwards told Patel that he had "the deal of the century" for Patel.  Edwards described the deal as "Man, two psychiatric nurses that write their own scripts. They're going to do it of no charge to you . . . All you're going to have to do is keep paying Dr. Greenbain." GX 1D, p. 1.  Cooperators, including Dinesh Patel and Gerald Funderburg, testified that, among other things, Edwards was actively involved in bribing Assisted Living Facility owners and bringing the prescriptions from those facilities to the Patel Pharmacies.  There can be no credible argument that the verdict against Sanyani Edwards in this case was somehow unjust, given the overwhelming evidence of Edwards's guilt.

Edwards also argues that he discovered papers in his garage several weeks after trial that would cast doubt upon the testimony of Dinesh Patel, a co-conspirator of Mr. Edwards's.  Specifically, Edwards claims that these documents would impeach  Dinesh Patel's claim not to know an individual named Bruce McCullough.   According to Edwards's Motion, had Patel admitted knowing

13

McCullough, Edwards could have somehow demonstrated that this fact proved Edwards had no knowledge of the conspiracy.

To prevail on a motion for a new trial based on newly discovered evidence, "a defendant must show that the new evidence (1) was discovered after the trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal." United States v. Hanna, 661 F.3d 271, 297 (6th Cir. 2011).

Defendant Edwards admits he was in possession of this purported evidence all along; evidently, it was in his garage, and he did not stumble across it until after trial. The government respectfully submits that "due diligence" would have required Edwards to search his personal papers for relevant evidence prior to trial, whether stored in his garage or elsewhere. Motions for a new trial have been denied in this Circuit on the grounds that evidence which is merely "newly available," is not "newly discovered" and thus cannot form the basis of such a motion. See, e.g., United States v. Turns, 198 F.3d 584, 588 (6th Cir. 2000) (witness who threatened to lie if subpoenaed at trial, but willing to testify truthfully after trial, not "newly discovered evidence," but merely newly available); United States v. Glover, 21 F.3d 133, 138 (6th Cir. 1994) (witness's

14

decision to invoke Fifth Amendment at trial, but willingness to testify truthfully later, not "newly discovered, but simply newly available). Papers the defendant discovered in his garage post-trial are perhaps newly available, but cannot be considered newly discovered under any reasonable definition of that term. Defendant's motion should be denied for this reason alone.

Furthermore, there has been no showing whatsoever that the outcome of the trial would have been different had Dinesh Patel admitted to knowing Bruce McCullough. As noted above, the evidence against Sanyani Edwards was overwhelming. Edwards has completely failed to demonstrate that the question of whether Dinesh Patel knew an individual named McCullough would have had any effect on that evidence or the jury's finding of guilt.

**D.    Conclusion**

For the forgoing reasons, the United States respectfully requests that the defendants' post-trial motions be denied.

Respectfully Submitted,

BARBARA L. MCQUADE
UNITED STATES ATTORNEY

/s/ John K. Neal

JOHN K. NEAL
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9644

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2013, I caused a copy of the foregoing to be served on all counsel of record using the Court's ECF filing system.

/s/ John K. Neal

John K. Neal

16