UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
   **PLAINTIFF,**

CASE #: 11-CR-20468

vs.

HON. ARTHUR J. TARNOW

**VINOD PATEL, D-36**
   **DEFENDANT.**

| | |
|---|---|
| AUSA Wayne F. Pratt | Richard M. Beuke |
| AUSA John K. Neal | Timothy M. Black |
| U.S. Attorney's Office | Counsel for Defendant Vinod Patel |
| 211 W. Fort Street, Suite 2001 | 115 W. 55th Street, Suite 400 |
| Detroit, MI 48226 | Chicago, IL 60514 |
| (313) 226-2548 | (312) 427-3050 |

### DEFENDANT VINOD PATEL'S RULE 29 MOTION FOR ENTRY OF JUDGMENT OF ACQUITTAL AND, IN THE ALTERNATIVE, RULE 33 MOTION FOR NEW TRIAL

  Defendant Vinod Patel, by and through his attorneys Richard M. Beuke and Timothy M. Black, moves this Honorable Court to enter a Judgment of Acquittal on his behalf pursuant to Federal Rule of Criminal Procedure 29, or in the alternative, to order a new trial pursuant to Federal Rule of Criminal Procedure 33.  *See* FED. R. CRIM. P. 29; *see also*, FED R. CRIM. P. 33.  In support thereof, the Defendant states the following:

  1. The Defendant was charged in Counts 1 and 21 of the First Superceding Indictment. (R737).  In Count 1, the Defendant was charged with Conspiracy to Commit Healthcare Fraud in violation of 18 U.S.C. § 1349.  *Id.*  In Count 21, he was charged with Conspiracy to Pay and Receive Healthcare Kickbacks in violation 18 U.S.C. § 371 and 42 U.S.C. 1320a-7b(b).  *Id.*

  2. At trial, the Government had the burden of proving all elements of both charges beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).

  3. The Government failed to prove all elements of both criminal charges beyond a

reasonable doubt. Viewing all of the evidence admitted at trial in a light most favorable to the Government, no rational trier of fact could have found all essential elements of each crime charged beyond a reasonable doubt. *See Jackson v. Virginia*, 433 U.S. 307, 319 (1979); *see also United States v. Sliwo*, 620 F.3d 630, 633 (6th Cir. 2010).

      4.      Therefore, pursuant to Federal Rule of Criminal Procedure 29, this Court should enter a Judgment of acquittal as to both counts alleged against the Defendant. *See* FED. R. CRIM. P. 29.

      5.      In the alternative, this Court should exercise its discretion pursuant to Federal Rule of Criminal Procedure 33(a) to grant a new trial for any other reason arising during the initial trial if justice so requires. FED. R. CRIM. P. 33.

      6.      Justice does so require in this case because the Court erred in several aspects of the pre-trial and trial process by denying the Defendant's pre-trial motions, overruling several objections made by the Defendant during trial, sustaining certain objections made by the Government during trial, including the Government's objection to presenting a full reading of a witness's cooperation agreement to the jury, and in granting the Government's oral motion to revoke the Defendant's bond.

WHEREFORE, for all the reasons stated above, combined with the reasons set forth in the attached Memorandum, the Defendant respectfully requests that this Honorable Court enter a Judgment of Acquittal, or in the alternative, order a new trial.

                                            Respectfully Submitted,

                                            <u>s/Richard M. Beuke</u>
                                            <u>s/Timothy M. Black</u>
                                            115 W. 55th St., Suite 400
                                            Clarendon Hills, IL 60514
                                            richardbeuke@gmail.com
                                            timothyblack@gmail.com
                                            (312) 427-3050
                                            Attorneys for Defendant Vinod Patel

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
    PLAINTIFF,

CASE #: 11-CR-20468

vs.

HON. ARTHUR J. TARNOW

VINOD PATEL, D-36
    DEFENDANT.

| AUSA Wayne F. Pratt | Richard M. Beuke |
| AUSA John K. Neal | Timothy M. Black |
| U.S. Attorney's Office | Counsel for Defendant Vinod Patel |
| 211 W. Fort Street, Suite 2001 | 115 W. 55th Street, Suite 400 |
| Detroit, MI 48226 | Chicago, IL 60514 |
| (313) 226-2548 | (312) 427-3050 |

**MEMORANDUM IN SUPPORT OF
DEFENDANT VINOD PATEL'S RULE 29 MOTION FOR ENTRY OF JUDGMENT
OF ACQUITTAL AND, IN THE ALTERNATIVE, RULE 33 MOTION FOR NEW TRIAL**

**I.   INTRODUCTION**

Defendant Vinod Patel moves this Honorable Court to enter a Judgment of Acquittal on his behalf pursuant to Federal Rule of Criminal Procedure 29, or in the alternative, to order a new trial pursuant to Federal Rule of Criminal Procedure 33.  *See* FED. R. CRIM. P. 29; *see also*, FED R. CRIM. P. 33.

**II.   Statement of Facts**

On March 19, 2013, Defendant Vinod Patel was charged by way of indictment in Count 1 with Health Care Fraud Conspiracy in violation of 18 U.S.C. § 1349, and in Count 21 with Conspiracy to Pay and Receive Health Care Kickbacks in violation of 18 U.S.C. § 371 and 42 U.S.C. 1320a-7b(b).  (R737).

Prior to trial, the Defendant filed a Motion to Cure Multiplicity of Counts and to Group and

Sever Movants for Trial (R1035), and a Motion to Dismiss Count One of the First Superseding Indictment Because of Duplicity (R1040 & R1080). During the Pretrial Conference, the Court denied both motions.

Trial began on July 10, 2014 when a jury was selected and empaneled. Following Opening statements on July 11, 2014, after the jury was excused for the day and prior to notifying the Defendant or his counsel, the government orally moved for the revocation of the Defendant's bond and his relinquishment of custody to the United States Marshall. A hearing was held during which Paresh Patel, a cousin of the Government's witness Atul Patel, testified that the Defendant, who had been a frequent patron of his liquor store and close family friend since 2006, asked him to tell Atul Patel to "tell the truth" and asked him to pass along a piece of paper to Atul Patel. The government produced a DEA-6 report containing highlights and notes, which was admitted as the piece of paper given to Paresh Patel by the Defendant to pass along to Atul Patel. During the hearing, however, Paresh Patel testified that he never read the piece of paper handed to him and did not know if the DEA-6 report produced by the Government was the piece of paper from the Defendant or if it was in the same or substantially the same condition as when it was handed to him if it was the same piece of paper. Following that hearing, the Government's motion was granted and the Defendant's bond was revoked sending him back into custody of the United States Marshall. On July 13, 2014, the Defendant filed a Motion to Reinstate his Bond (R1220), which was denied.

At trial, the Government presented evidence through two Task Force Officers, four cooperating witnesses, and one former patient of the Defendant's home health agency. Through the Task Force Officers, Douglas Carmack and Christopher Gould, the Government explained the investigation, introduced evidence of the crimes of the Defendant's alleged co-conspirators, played Title III phone calls that largely didn't involve the Defendant, and displayed charts compiled from

Medicare, Medicaid, Blue Cross Blue Shield of Michigan, and banking records. Through the testimony of the four cooperating witnesses, Atul Patel, Ramesh Patel, Pradeep Pandya, and Hiren Patel, the Government attempted to show the Defendant's involvement in the alleged conspiracy. And through the patient, Jeffrey Wade, the Government attempted to present the argument that he did not receive care from the Defendant's home health agency, but was billed for such care. Additionally, the Government presented witnesses from Medicare, Medicaid, and Blue Cross Blue Shield of Michigan to establish foundation for the records used to make charts.

Finally, during trial, the Defendant made several objections that were overruled, and the Government made several objections that were sustained. As an example, the Court sustained the Government's objection to a complete reading of the Cooperation Agreements of Atul Patel & Pradeep Pandya, specifically as they related to the provision about polygraph testing.

At the conclusion of trial on July 18, 2014, the jury returned a verdict of guilty. At that time, the Court denied the Defendant's oral motion to reinstate his bond, and the Defendant was remanded to the custody of the United States Marshall.

### III. PURSUANT TO RULE 29, A JUDGMENT OF ACQUITTAL MUST BE ENTERED AS TO BOTH COUNTS OF CONVICTION

The government failed to produce sufficient evidence to prove beyond a reasonable doubt all required elements of the counts charged to the Defendant. Federal Rule of Criminal Procedure 29(c)(2) gives the trial court discretion to set aside a guilty verdict and enter a judgment of acquittal. FED. R. CRIM. P. 29. In reviewing a defendant's motion for judgment of acquittal, the Court must view the evidence in a light most favorable to the government and, after so doing, the Court must determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Kernell*, 667 F.3d 746, 756 (6th Cir. 2012); *United States v.*

*Conatser*, 514 F.3d 508, 518 (6th Cir. 2008); *Jackson v. Virginia*, 443 U.S. 307, 319 (1978). In this case, viewing all of the evidence presented at trial in a light most favorable to the government, including that which was improperly admitted, no rational trier of fact could have found that the essential elements of the crimes charged were proved beyond a reasonable doubt. Instead, the jury's verdict was against the manifest weight of the evidence produced by the government at trial, and this Court should enter a Judgment of Acquittal on both counts.

Specifically, a large portion of the evidence introduced by the task force officers was admittedly not directly related to the Defendant. The agents repeatedly admitted that the evidence that was introduced through them, including pictures of evidence seized and transcripts of telephone calls between Babhubai Patel and others, did not involve the Defendant in any way. (R1258 at 83-127). In fact, the multitude of investigative techniques discussed at length by Douglass Carmack were not used on the Defendant, and not only did there not exist a single piece of evidence recovered from the Defendant or his home health agency, but none of his assets were ever searched or seized. (R1258 at 83-102). The majority of the telephone calls that were used against Mr. Patel in this case did not involve him, did not discuss him, and did not discuss matters related to him. Of the 20,000 calls that were recorded in this case, the Government produced 7 that included the Defendant's voice, and they were not able to connect a single one of those calls to any criminal activity. Finally, the data recovered from Medicare, Medicaid, Blue Cross Blue Shield of Michigan, and First Michigan Home Health Care's bank was not indicative of guilt in this case in any way. The charts that were compiled using that data, including the charts created to show sums of money and number of prescriptions, were misleading and did not prove guilt of the Defendant. The charts presented incomplete sets of numbers containing incomplete factual scenarios that did not prove the guilt of the Defendant.

Not a single one of the lay witnesses in this case credibly testified to the Defendant's guilt. Atul Patel, who admitted to repeatedly lying to the Government, established a policy and practice of the Defendant where an employee of First Michigan Home Health Care would be fired if the Defendant learned that the employee was breaking the law. He fired Judu (R1259 at 26, ln. 7-11) and Phil (R1259 at 32, ln. 9-18), two marketers who abused their proximity to narcotics, and he stopped associating with Glenn English when he was caught signing in patients for several days (R1259 at 65-67, ln. 12-1). Furthermore, Atul Patel admitted that he and Lalit Patel were involved in an illegal scheme to bill but not dispense at Beecher Pharmacy *of which the Defendant was wholly unaware*. (R1259 at 78, ln. 14-18). Atul and Lalit purposefully kept their scheme a secret, and purposefully kept the proceeds of the scheme away from the Defendant.

The testimony of Ramesh Patel showed that he clearly, in his own words, "controlled the operation." *Compare, e.g.* (R1260 at 87, ln. 18-24) *with* (R1262 at 123, ln. 14-22). His testimony revealed that First Michigan Home Health Care was incorporated against the Defendant's will, outside of the presence of the Defendant, using a forged signature of the Defendant. (R1260 at 59-60, ln. 20-11). Then, when the Defendant was unable to run a profitable home health agency, the Defendant's brother Babhubai Patel, sent Ramesh Patel to First Michigan Home Health Care to run it. (R1260 at 82-83, ln. 20-22). Not coincidentally, as soon as Ramesh Patel gained control of the company, it began to see a profit and Ramesh Patel was given ownership interest - the Defendant would never excercisie control over the company again. Furthermore, Ramesh Patel was impeached several times when he denied making comments to Task Force Officer Carmack, about which Carmack testified to the contrary. *Compare* (R1260 at 87, ln 18-24; at 99, ln. 16-20; and at 104, ln. 17-19) *with* (R1262 at 123-124, ln. 4-15). Also not coincidentally, Christopher Gould testified that the signature on the checks recovered from First Michigan Home Health Agency, while retaining the

Defendant's name, changed in appearance. (R1263 at 38-49, ln. 21-8). He could not say which, if either, was the Defendant's signature because he had never investigated that. (R1263 at 38-49, ln. 21-8). The signatures on the checks changed in 2009, around the same time Ramesh Patel testified to gaining control of the company. (R1263 at 38-49, ln. 21-8).

Pradeep Pandya, who was described by Hiren Patel as "the worst person in the world" (R1262 at 24, ln. 12-14) and "worse than me" (R1262 at 22, ln. 11-18) lacked credibility on the stand. He testified *ad nauseum* to his close involvement with Babhubai Patel and Mr. Patel's phramacies, and his deep involvement with Mr. Patel's bill-but-not-dispense scheme. He even testified that after Mr. Patel was indicted, he continued to run his own bill-but-not-dispense scheme with Hiren Patel and Mehul Patel that was started by stealing medications from Babhubai Patel. Hiren Patel corroborated that fact, which coincidentally was one of the only corroborated facts that came out of either witnesses mouth at trial. Pradeep Pandya was never able, however, to connect it to the Defendant with anything except a blanket accusation of involvement. He testified that when he had a problem receiving questionable prescriptions from Dr. Burdette, he told the Defendant and the Defendant arranged a meeting between the two so they could discuss the problems. (R1261 at 58, ln. 2-25). He did not provide any credible evidence that the Defendant was involved in any illegal activity or that he knew about any illegal activity.

Hiren Patel was another witness that testified without credibility. He was impeached repeatedly with his bias and motive to lie. The entirety of his testimony about the Defendant came in the form of conversations he allegedly had with the Defendant in 2009 and 2010. None of the conversations he referenced were conducted in the presence of anyone who testified and none of the conversations he testified to were corroborated. Hiren Patel mostly testified about *his* illegal activity, and how that activity was connected to Bob Patel, not the Defendant. He testified about being

groomed by Mitesh Patel in the bill-but-not-dispense scheme that Bob Patel created and perfected. (R1261 at 177-181, ln. 9-21). Not once did he testify that the Defendant was involved in his recruiting or schooling of the pharmacy empire controlled by Bob Patel. Similarly, he testified at length about the bonus checks he received from Bob Patel and Ramesh Patel (R1261 at 182-187, ln. 5-18), but never testified about receiving any money from the Defendant.

Finally, the Government produced one patient, Jeffrey Wade, to testify that he couldn't remember if he ever received home health care from First Michigan Home Health Care. (R1261 at 110, ln. 4-22). Jeffrey Wade was easily agitated and admitted several times that he was only testifying so that his name would stop coming up in the investigation. (R1261 at 109-110, ln. 22-1). He admitted that he received home health care around the time that he was billed by First Michigan Home Health Care, but could not remember who provided the care. In fact, he identified the Defendant, a high school dropout, as one of the doctors that delivered care to him. (R1261 at 116, ln. 8-13). Curiously, the Government failed to produce a single credible patient that could sit on the witness stand and testify with any certainty that they were billed for services they did not receive or services to which they were not entitled by First Michigan. Similarly conspicuous in its absence was testimony from a doctor, nurse, physical therapist, occupational therapist, or any other medical professional who testified that they received any sort of kickback from the Defendant personally, from the Defendant's company, or from a representative or colleague of the Defendant. An investigation that took several years and contained over 35 defendants could not produce a single witness that said they took a kickback from the Defendant, or anyone associated with the Defendant.

In sum, the Government failed to prove the Defendant's involvement in Babhubai Patel's healthcare fraud scheme beyond a reasonable doubt. The Defendant should not be convicted based upon his familial relationship to the conspiracy's ringleader when the evidence failed to show that

he knowingly joined his brother's illegal activity or knowingly profited from it. To the contrary, the evidence showed that the Defendant repeatedly tried to get out from under the dark shadow cast by his brother's illegal activity by trying to run legitimate healthcare ventures, but every time he tried, his brother would strongarm one of his trained henchmen into the Defendant's legitimate enterprise and force the Defendant out. Therefore, this Court should enter a judgment of acquittal notwithstanding the jury's verdict of guilt.

### V. A NEW TRIAL PURSUANT TO RULE 33 MUST BE GRANTED TO PREVENT MANIFEST INJUSTICE

If the Court does not enter a judgment of acquittal in this case, a new trial should be granted. The Court erred in denying the Defendant's pretrial motions, in overruling the Defendant's objections at trial and sustaining the Government's objections, and in revoking the Defendant's bond and denying his motion to reinstate his bond.

The Court erred in denying the Defendant's pretrial motions. Specifically, the Court erred in denying the Defendant's Motion to Cure Multiplicity of Counts and to Group and Sever Movants for Trial (R1035), and his Motion to Dismiss Count One of the First Superseding Indictment Because of Duplicity (R1040 & R1080). For the reasons stated within those motions, the Court should not have denied them, and erred in doing so.

Throughout trial, the Defendant made several objections that were overruled and the Government made several objections that were sustained. The Court erred in overruling the Defendant's objections as they were made upon sound legal reasoning. Similarly, the Court erred in sustaining the Government's objections because the Defendant's line of questioning was not legally objectionable. A specific example of the Court's error in sustaining objections by the Government is related to the Cooperation Agreements of Atul Patel and Pradeep Pandya. (R1259

at 159-161, ln. 8-9) and (R1263 at 136-138, ln. 6-8). Contained within those documents, which were prepared by the Government with absolutely no input from the Defendant, was a clause guaranteeing the Government the right to submit the witness to a polygraph test if there came a situation where the Government thought the witness might be lying. The Defendant was allowed the opportunity to go through the entire Cooperation Agreement with both witnesses, <u>except</u> for the part about the polygraph. When the Defendant attempted to cross-examine each witness on their Cooperation Agreement and Douglas Carmack on his understanding of the agreements, the Government vehemently objected and the Court sustained the objection. The Government's Cooperation Agreement with a cooperating witness is an extremely ripe area of cross examination as it gets to the very heart of the witness's motive to lie. By not allowing the Defendant to explore that area of motive, he was deprived of the ability to fully expose the bias of the witnesses brought to testify against him at trial.

Finally, the Court erred in revoking the Defendant's bond during trial. For the reasons set forth in his Motion to Reinstate Bond, the revocation of his bond created an undue hardship on the Defendant and significantly hindered his ability to mount a meaningful defense in this case. (R1220). The Defendant should have been allowed access to his attorneys, and the punishment of revocation of his bond overstated the seriousness of the acts he was alleged to have committed while on bond.

## VI.   CONCLUSION AND REQUEST FOR RELIEF

For all of the foregoing reasons, this Court should grant the Defendant's Motion for Judgment of Acquittal pursuant to Rule 29, and order that a Judgment of Acquittal be entered as to both counts of conviction. In the alternative, this Court should grant the Defendant's Motion for New Trial pursuant to Rule 33.

Respectfully Submitted,

s/Richard M. Beuke
s/Timothy M. Black
115 W. 55th St., Suite 400
Clarendon Hills, IL 60514
richardbeuke@gmail.com
timothyblack@gmail.com
(312) 427-3050
Attorneys for Defendant Vinod Patel