UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

                    Government.

       v.                              Case No. 11-20468

MICHAEL THORAN,

                    Defendant.

_____/

SENTENCE HEARING

BEFORE ARTHUR J. TARNOW
United States District Judge
108 US Courthouse & Federal Building
231 W. Lafayette Street
Detroit, Michigan 48226
Thursday, January 8, 2015

APPEARANCES:

        NIALL O'DONNELL
        **WAYNE F. PRATT**
        Assistant United States Attorneys
        211 W. Fort Street
        Detroit, MI 48226
        On behalf of the Government.

        ROBYN B. FRANKEL
        26711 Woodward Avenue
        Hutington Woods, MI 48070
        On behalf of the Defendant.

Transcribed by:
Carol S. Sapala, RMR, FCRR
313.961.7552
www.transcriptorders.com

**ALSO APPEARING:**

    **CHRISTINE CONNOLLY**
    **United States Probation Officer.**

Sentence Hearing  1-8-2015

C O N T E N T S

_____

IDENTIFICATION                    PAGE

WITNESSES

None.

Sentence Hearing                              4

Renewed Motion To Revoke Bond                 45

Certificate of Transcriber                    48

E X H I B I T S

_____

IDENTIFICATION                    MARKED     RECEIVED

None Marked, Offered or Received

Usa v Thoran 11-20468

1                    Detroit, Michigan

2                    Thursday, January 8, 2015

3                    2:30 p.m.

4                    (The transcriber was not

5                    present at this hearing)

6              CASE MANAGER:  Court calls case number 11-20468.

7    United States of America versus Michael Thoran.

8                    Will counsel place their appearances

9    on the record.

10             MR. NEAL:  Good afternoon, Your Honor of the John

11   Neal and Wayne Pratt, appearing on behalf of the United States.

12             MS. FRANKEL:  Good afternoon, Judge.

13             For the record, Robyn Frankel, appearing here with

14   Michael Thoran.

15             THE COURT:  Good afternoon.

16             Good afternoon, Mr. Thoran.

17             THE DEFENDANT:  Good afternoon.

18             THE COURT:  Would you come to the lectern, please.

19             Ms. Franco, that is adjustable.

20             MS. FRANKEL:  Thank you, Judge.

21             THE COURT:  The lectern is adjustable, if you want to

22   raise it for your client so he doesn't have to lean over.

23   There's a switch by your right hand.

24             MS. FRANKEL:  Got it.  Thank you, Your Honor.

25             THE COURT:  Actually your left hand, also.

1        All right.  Do you understand why you're here?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Raise your right hand.

4        (Whereupon the defendant was then sworn)

5        THE COURT:  Okay.  Please adjust the microphone so I

6    can hear you.

7        THE DEFENDANT:  Yes.

8        THE COURT:  Okay.  Do you understand you still have a

9    fifth -- you can put your hand down -- that you still have a

10   Fifth Amendment right to remain silent?

11       THE DEFENDANT:  Yes.

12       THE COURT:  That means you don't have to answer my

13   questions.

14       Do you choose to answer my questions?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Okay.  You are on bond, correct?

17       THE DEFENDANT:  Correct.

18       THE COURT:  And you have -- or have you had any

19   substances, whether it be alcohol, prescription drugs or other

20   drugs, that would make it hard for you to understand what I'm

21   saying?

22       THE DEFENDANT:  No.

23       THE COURT:  And you've read your Presentence Report?

24       THE DEFENDANT:  Yes.

25       THE COURT:  Do you have any -- well, did you talk to

```
 1        your attorney about it, go over it with your attorney?
 2                    THE DEFENDANT:  Yes.
 3                    THE COURT:  Are you satisfied with your attorney?
 4                    THE DEFENDANT:  Yes.
 5                    THE COURT:  Okay.
 6                    Do you have any questions of me about anything in the
 7        Presentence Report or anything that's going to happen today?
 8                    THE DEFENDANT:  Not really, no.
 9                    THE COURT:  Okay.  Do you know why you're here?  What
10        the proceeding is today?
11                    THE DEFENDANT:  Yes.  Sentencing.
12                    THE COURT:  Correct.
13                    So I'm going to have some more time allotted for you
14        to say whatever you want to say, but before I come back to you,
15        I want to hear from the government and your attorney about the
16        Presentence Report.
17                    Are there any objections that have not been resolved
18        as to the Presentence Report?
19                    MS. FRANKEL:  Judge, before I reach that point, I had
20        a brief conversation with the government this afternoon.
21                    MR. NEAL:  Yes.  I will be glad to put that on the
22        record, Your Honor.
23                    Your Honor, the sides calculated different guideline
24        ranges for the defendant.
25
```

1        The Probation Office and the government calculated an

2    effective guideline range of 235 to 293 months of

3    incarceration.

4        THE COURT:  Mm-hmm.

5        MR. NEAL:  The defendant came to a more conservative

6    calculation, calculated a guideline range of 168 to 210 months

7    imprisonment.

8        Based on all of the factors set forth in 3553(a), the

9    government is asking for a sentence of ten years incarceration

10   for this defendant.

11       Given that fact, even though the government maintains

12   that factually and legally the higher guideline range is

13   appropriate, I think for the purposes of this --

14       THE COURT:  Give me a hint; which higher guideline

15   range?

16       MR. NEAL:  The 235 to 293 month guideline range is

17   appropriate.

18       For the purposes of this proceeding, the government

19   is willing to stipulate to the defendant's guideline range of

20   168 to 210 months at this point.

21       THE COURT:  Okay.  Hang on just a second, because my

22   notes are missing, but I will be back.  We are in recess for a

23       *(Recess taken.)*

24

25

1          CASE MANAGER:  Please rise.  This court is again in

2     session.  You may be seated.

3          THE COURT:  Thank you.

4          For the record, I forgot my summary sheet.

5          So you were saying?

6          MR. NEAL:  For the purposes of this proceeding, Your

7     Honor, the government is willing to stipulate to the

8     defendant's proffered guideline range, which is an Offense

9     Level 30, Criminal History Category VI.

10         THE COURT:  Okay.  Because my notes show the last I

11    heard was that it was Level 33 because of the change in law.

12    And it's all irrelevant now if you are stipulating to 30.

13         And you are in agreement with that, Ms. Franco?

14         MS. FRANKEL:  I am, Judge.  Those are, obviously, the

15    guidelines that were set out in the sentencing memo.

16         And if I may just interject briefly?

17         The Sentencing Memorandum as well as the objections

18    to the Presentence Report were previously filed by counsel that

19    preceded me, Martin Beres.

20         THE COURT:  Okay.

21         MS. FRANKEL:  I have not supplemented it.

22         I think we spent about two hours this week and three

23    hours last week, Mr. Thoran and I, reviewing all those

24    documents in detail.

25

1       And we are comfortable with adopting them also our

2   own and proceeding with those without any amendments or

3   supplements.

4       THE COURT:  Okay.  And I'm looking at the Sentencing

5   Commission Guideline Manual of this year, and that indicates a

6   Level 36 is 168 to 210.

7       Everyone agree with that?

8       MR. NEAL:  The government does, Your Honor.

9       MS. FRANKEL:  Yes, Judge.

10      THE COURT:  Okay.

11      And the record should reflect it might be the first

12  time I've looked at this book this year, certainly, this year.

13      But all right.  So we are settled on the guideline

14  score and we are settled on the government's suggestion of 120

15  months, which is 10 years.  And 168 months is 14 years.  So

16  you're asking for a variance.

17      And tell me what your thinking is.

18      MR. NEAL:  Certainly, Your Honor.  I will go through

19  the 3553(a) factors and set forth how they factored into the

20  government's sentencing recommendation.

21      I think with respect to the nature and circumstances

22  of the offense, this is a very serious offense.

23      Mr. Thoran was a marketer for Babubhai Patel.  He

24  recruited patients, brought them to various doctors affiliated

25  with Patel, including those at the notorious Visiting Doctors

1    of America, obtained bogus prescriptions, took them to a

2    pharmacy controlled by Babubhai Patel and obtained controlled

3    substances.  And from there, he took those controlled

4    substances and sold them on the street for a profit.

5              Mr. Thoran did not do this on one occasion or on two

6    occasions, but he did it on many occasions and at many

7    different pharmacies and there was substantial testimony to

8    that effect at his trial.

9              THE COURT:  Let me interrupt you and ask you to

10   define marketer for me.

11             MR. NEAL:  Sure.

12             A marketer in the parlance used by the Babubhai Patel

13   organization was essentially a pill dealer, someone who

14   supplied prescriptions to the Patel pharmacies, and they would

15   typically supply prescriptions for controlled drugs and

16   noncontrolled drugs.

17             The noncontrolled drugs would be billed and not

18   dispensed by the Patel pharmacies.

19             The controlled medications would be billed and

20   dispensed, usually given to the marketer, who then could take

21   those medications and sell them for a profit on the street.

22             Mr. Thoran was not the only marketer in the Patel

23   organization, but he was the most culpable, and he was the most

24   culpable for several reasons.

25

1          First of all, the nature of the pills that he

2    distributed.  He distributed Schedule II controlled substances,

3    and did so on a fairly large scale.

4          None of the other marketers sentenced in this case

5    were involved with Schedule II controlled substances.  All of

6    those marketers were involved with Schedule III and below.

7          Secondly, so far as I can tell, Mr. Thoran was the

8    only marketer in this case who had direct interactions with

9    Babubhai Patel.

10          Leodis Elliott, LaVar Carter, these others, there

11    were no intercepted calls with these individuals talking to

12    Babubhai Patel in a substantive way.

13          There were intercepted calls with Mr. Thoran talking

14    to Babubhai Patel and making arrangements with him.  This was

15    one of the most favored marketers in the Patel organization.

16          The nature of Mr. Thoran's criminality within the

17    organization was brazen.

18          There was testimony at trial, a number of pharmacists

19    were scared to work with Mr. Thoran because his criminal

20    conduct was so obvious and so brazen, they were afraid it was

21    going to attract scrutiny from the authorities.

22          With respect to the history and characteristics of

23    the offender, the Presentence Report sets forth Mr. Thoran has

24    had a number of personal financial challenges in his life.

25

Sentence Hearing  1-8-2015

1       Mr. Thoran has also made a series of terrible

2  choices.

3       His criminal history is extensive and appalling.  On

4  at least one occasion -- a number of the -- a number of the

5  criminal convictions that are listed in the Presentence Report

6  don't contain any factual information.  That information was

7  unavailable to the Presentence Report writer.

8       But for several of the ones that were -- where those

9  facts were available, they were quite, quite striking.

10      On one occasion, Mr. Thoran is alleged to have held a

11  gun underneath someone's chin and threatened to kill that

12  individual and his family.

13      Mr. Thoran resisted arrest and assaulted a police

14  officer on another occasion.  Stealing vehicles.

15      His criminal history is most extensive, I believe, of

16  any of the individuals that have been sentenced in this case.

17  That would appropriately yield a criminal history category of

18  VI.

19      With respect to deterrence --

20      THE COURT:  That would be 15 points.

21      MR. NEAL:  Very high, a very high criminal history.

22      With respect to deterrence -- with respect to most of

23  the defendants that have been sentenced in this case, specific

24  deterrence is of little concern, whereas general deterrence, in

25  the government's view, is a more significant concern.

1          Talking about medical professionals, you know,

2     individuals with licenses, where word can travel that there are

3     significant consequences for this sort of conduct.

4          I think with respect to Mr. Thoran we have almost the

5     opposite situation.  In fact, not almost; we have exactly the

6     opposite situation.

7          General deterrence is of very little concern here.

8     Mr. Thoran is not a licensed professional.  I doubt a word of

9     this -- of his sentence will travel very far.  However, with

10    respect to specific deterrence, I think that's an important

11    consideration.

12         Mr. Thoran has been incorrigible.  None of his

13    contacts with the criminal justice system, and there have been

14    many, have done anything to deter him from committing crimes.

15         Mr. Thoran has been out on bond for a substantial

16    period in this case and Mr. Thoran has had great difficulty

17    complying with the terms and conditions of his bond.

18         Mr. Thoran has not cleaned up many of his outstanding

19    warrants or any substantial number of his many outstanding

20    warrants as required to do so by this Court.  Nothing has

21    deterred Mr. Thoran.

22         A substantial period of incarceration, I think, is

23    the only thing that would create that sort of specific

24    deterrent effect.

25

1          And Mr. Thoran is a young man.  A sentence of ten

2     years would incapacitate him for a period of time, but it would

3     also, hopefully, have the effect of changing his behavior in

4     the long-term.

5          With respect to disparity, Mr. Thoran is the most

6     culpable marketer in the case.

7          The other marketers who have been sentenced in this

8     case, LaVar Carter, Leodis Elliott and Anthony Macklin, all

9     three of them cooperated with the government and received 5K

10    motions at the time of sentencing.

11         In addition, none of the three distributed bills at

12    anything like the quantity or the nature; none of them had

13    Schedule II controlled substances.

14         THE COURT:  Why don't you tell us what Schedule II

15    drugs were involved.

16         MR. NEAL:  The Schedule II drugs are primarily

17    Oxycontin or Oxycodone, a very, very powerful opiate.

18         Schedule III controlled substances, the most common

19    one is Hydrocodone, Vicodin, Lortab, Norco.

20         And the Sentencing Guidelines treat them differently

21    and pharmacologically they are very different.

22         The Schedule II controlled substances are really the

23    most dangerous drugs that are legally available.

24         Schedule I being drugs for which there is no

25    legitimate medical purpose, such as heroin and drugs of that

Sentence Hearing  1-8-2015

1   sort.  This is the only marketer that has been convicted of

2   distributing Schedule II substances.

3          When you put all those factors together, a sentence

4   of ten years is very high.  It is below the guideline range for

5   this offender, but it is, nonetheless, very high.  The

6   government acknowledges that.

7          But I think weighing all of these different factors

8   it is really the most appropriate sentence for this defendant.

9          And I think it would achieve the goals of creating

10  specific deterrence, just punishment for the offense, and it is

11  an appropriate assessment of the history and characteristics of

12  this offender.

13          THE COURT:  How much dollar value in terms of

14  restitution?

15          MR. NEAL:  There is a substantial amount of

16  restitution.  He was convicted of the fraud, Count 2.

17          The actual dollar amount is listed in the PSR.  It

18  will be joint and several with the other offenders in the case.

19  I will get that figure for you.

20          THE COURT:  2.8 million sound right?

21          MR. NEAL:  It does, Your Honor.

22          THE COURT:  2 million 800,000.

23          MR. NEAL:  The specific figure is listed in the --

24          THE COURT:  Okay.

25

1          MR. NEAL:  I am sorry, Your Honor.

2          It looks like it will be approximately -- I

3   apologize -- $2,632,000, approximately and that would go to the

4   Medicare and Medicaid programs.

5          THE COURT:  Okay.  What do you have to say?  Well,

6   one last thing.

7          How many months did Mr. Patel, the leader, get?

8          MR. NEAL:  He received a 17-year sentence of 204

9   months incarceration.

10          THE COURT:  Okay.  You may respond.

11          MS. FRANKEL:  Thank you, Judge.  Dr. Patel got 204

12   months, I think, 17 years.

13          THE COURT:  Yes.

14          MS. FRANKEL:  Leodis Elliott got 20 months, LaVar

15   Carter got 30 months, Anthony Macklin got 30 months, to be

16   served concurrent with a Michigan Department of Corrections

17   sentence for which he was already serving time.

18          Granted, they all had Rule 11's.  They didn't put the

19   government to their proofs, but that's, obviously, taken into

20   consideration in the guidelines.

21          Mr. Macklin, if I am correct, had criminal history

22   points of 26, much higher than Mr. Thoran.

23          So if we want to compare them for disparity sake,

24   there are some levels we can compare and some we can't.

25

1          They were not dealing with Schedule II's.  They

2    cooperated.  Other than those two factors, we believe they are

3    the same.

4          THE COURT:  Sort of like the Titanic captain.

5          MS. FRANKEL:  No.

6          THE COURT:  Or the Big Journey, until they bumped

7    into the ice.

8          MS. FRANKEL:  I'm not saying that Mr. Thoran

9    shouldn't be sentenced to a higher number than those folks, but

10   I don't think he should be sentenced to 120 months.

11         THE COURT:  Okay.

12         MS. FRANKEL:  And, you know, you can't really compare

13   him to the guys at the top.

14         It's not even apples and oranges because they are not

15   even both in the same world.

16         You've got --

17         THE COURT:  Well, Mr. Patel, at the very top, is

18   unique in this case.  I will agree with you on that.  And

19   you're absolutely right.  But he's not -- at least I'm not

20   considering a Patel like sentence.

21         MS. FRANKEL:  And I --

22         THE COURT:  But I would like to hear you explain why

23   the government is wrong when they suggest 120 months.

24         MS. FRANKEL:  Because they say that my client's

25   behavior is incorrigible, that his criminal conduct is

Sentence Hearing  1-8-2015

1    incorrigible, that every stint he has had has failed to make an

2    impression on him and he has failed to change his ways.

3              Well you know what?  Every stint that he's had since

4    he was 14 and basically thrown away has been lock him up.

5              When he messes up, send him home.  Messes up again,

6    put him in another program.  Messes up, terminated without

7    improvement.

8              He gets in trouble.  Well, he is an adult now.  We

9    are going to terminate the juvenile court jurisdiction because

10   he is an adult now and don't have to deal with him anymore.

11             Put him on probation in the adult probation system.

12   Has a problem, what do the doctors do?  Terminate him without

13   improvement.

14             When you go through this Presentence Report, that is

15   virtually what was done almost all the way up till he goes to

16   prison.

17             THE COURT:  Well, you forgot one series.  He was out

18   before the sentence.  He was obviously out on bond.

19             MS. FRANKEL:  Yes.

20             THE COURT:  He's not wearing any uniform from any

21   jail or prison.  And to his credit, he showed up today.

22             But if you look through his stint in this case, as

23   recently as, I don't know, four or five weeks ago, he was going

24   out of state without permission.

25

Usa v Thoran 11-20468

1           He was arrested, I think in West Virginia, where they

2    did not bring charges.

3           MS. FRANKEL:  Correct.  He was stopped.

4           THE COURT:  Pardon?

5           MS. FRANKEL:  He -- he was stopped there, Judge.  I

6    don't think there was any arrest.

7           THE COURT:  Well, they found $9,000.  And I hope you

8    got that back.

9           THE DEFENDANT:  Not yet.

10          THE COURT:  Pardon?

11          THE DEFENDANT:  Not yet.

12          THE COURT:  All right.  Well, your attorney can do

13   that or deal with it appropriately.  Maybe it will save

14   Medicare.

15          But even at this late date, he was not respecting the

16   people who were trying to help him stay out of trouble.

17          And, quite frankly, given the kind of time he's

18   facing, I'm not sure if somebody hadn't asked me to cancel his

19   bond at the end of trial, whether I would have done it or not.

20          Did you ask?

21          MR. NEAL:  We did, Your Honor.

22          THE COURT:  Well then, I didn't do it.

23          But we are all very lucky that you followed the most

24   important rule, which is don't make the newspapers, don't get

25   caught in a highly visible crime.

Sentence Hearing   1-8-2015

1          And, again, that's one of the reasons why I would

2     never consider giving you more time or even equal time to

3     Mr. Patel.

4          Because Mr. Patel not only made a lot more money than

5     you, but he devised the scheme and he destroyed people's lives,

6     mainly pharmacists whom he corrupted.  And you bought into it.

7     To a certain extent, he corrupted you also.

8          But go on with your argument, please.

9          MS. FRANKEL:  Thank you.

10          And along that line, Judge, over the last couple of

11     days, I've taken to reading a lot of sentencing memorandums

12     written in other associated cases.

13          And with respect to the lead defendant, the

14     government noted in their Sentencing Memorandum that

15     pharmacists within the organization used controlled substances

16     as bait to attract marketers.

17          Now I'm not saying in any way that Michael Thoran is

18     the victim of this scheme, although in some ways he is.

19          This is not a young man who has the wherewithal to

20     put this massive criminal enterprise into play.

21          THE COURT:  Well, I wouldn't underestimate him, but

22     he didn't do it in this case.

23          MS. FRANKEL:  No, he didn't.  He's not a college

24     graduate.  He's not a doctor.

25          He didn't have every opportunity that I've had --

1          THE COURT:  I don't think -- I don't think Mr. Patel

2     was a college graduate.

3          Was he a college graduate?  He wasn't a pharmacist,

4     he wasn't a doctor.

5          MR. NEAL:  He was actually a pharmacist, Your Honor,

6     that didn't practice pharmacy.

7          THE COURT:  Didn't practice.  Okay.

8          MS. FRANKEL:  Mr. Thoran finished the tenth grade, I

9     believe.

10         THE COURT:  Look.

11         I've read the Presentence Report and I could not

12    disagree with you in terms of his upbringing.  And I can't turn

13    the clock back and change that.  And I can't preach to him

14    that, well, some people did it; why didn't you.

15         Because the majority of the people who were treated

16    like you were treated don't -- they may not get involved in

17    crime, but they also don't get involved in leadership roles.

18         Very few people who were brought up in the conditions

19    that you were brought up in can overcome that, but that's no

20    justification.

21         It may be an explanation, but it's no justification

22    for putting all the drugs on the street that you did and making

23    money at it.

24         Go on.

25         MS. FRANKEL:  And I'm not trying to say that it's

1    justification for his actions.

2              What I'm offering it for and what I think is in the

3    presentence and in the Sentencing Memorandums is an

4    explanation.

5              But it's an explanation that we hope and we believe

6    that this Court should consider in deciding what his sentence

7    ought to be under the 3553 factors.  Because his character and

8    his personal history is something for the Court to take into

9    consideration and you combine that with the need to prevent

10   disparate sentences.

11             There aren't a whole lot of defendants that sit in

12   the same particular spot as Mr. Thoran.

13             Again, I believe there are three other marketers that

14   we can look at that received sentences 20, 30 and 30 months.

15             To go 120 months, to increase it by that

16   percentage -- and I'm not a math major.  I can't even figure

17   off the top of my head the increase over the top of the 30

18   months --

19             THE COURT:  Oh, I think you can.  It's four times.

20             MS. FRANKEL:   -- is excessive.  You want to go 48

21   months?  I can see 48 months.

22             To go 120 months over the highest sentence that

23   another marketer got because he chose to exercise his right to

24   trial and because he was involved with Schedule II drugs?

25             Those things may justify an increase --

Sentence Hearing  1-8-2015

```
 1              THE COURT:  Let me respond to the first part of that;
 2    and that is, the 120 months discounts or doesn't count the fact
 3    that he went to trial.
 4              While the law says and the guidelines specifically
 5    penalize somebody for going to trial, not in this case.  And I
 6    try never to do that.
 7              MS. FRANKEL:  And I'm not implying that you do,
 8    Judge.
 9              THE COURT:  No, no.
10              But you are using that as an explanation of the
11    justification of going to 120 months.  That's not part of the
12    justification.  That's not what the government said.
13              And if I do give 120 months or 110 months, I'll
14    explain all the factors that I'm considering.
15              And Schedule II drugs does make a difference.
16    Cooperating and helping is a relevant factor, not because it
17    makes it easier for the government, but because it shows a
18    change in attitude towards the government.
19              In other words -- I watch enough television to know
20    there's a group of people, sometimes I'm part of that group,
21    who disagree with what the government does and in that
22    particular situation would not help the government.
23              But here, when one of the factors is special
24    deterrence; that is, to deter your client, that becomes
25    relevant.
```

Sentence Hearing  1-8-2015

1          That he has not seen fit to help the government --

2          MS. FRANKEL:  That's true, Judge, but also --

3          THE COURT:  -- as a disparity factor.

4          MS. FRANKEL:  I think you also need to take into

5   consideration that based on his upbringing and based on his

6   essentially institutionalization from the time he was maybe 14.

7          This is not a young man who has got great faith in

8   the system or, let me back up, trust in people, including his

9   own lawyers, as we know by the fact that he has gone through I

10  think three or four in this case alone.  He doesn't have a lot

11  of trust.

12         Quite honestly, we spent hours and hours in the last

13  two weeks so that I could try to get him to see that I was on

14  his side.

15         So for somebody to tell him that he should go in and

16  tell is not in his nature, it's not in his upbringing, it's not

17  part of his world.

18         THE COURT:  But I'm not saying that's the reason --

19  the only reason that I would consider a higher sentence than

20  the people you've mentioned.

21         I'm saying that when you are talking about disparity,

22  that's a significant difference justifying the lower sentence

23  for those other folks.

24

25         MS. FRANKEL:  And we don't disagree with that at all,

1    Judge.

2              THE COURT:  Okay.

3              MS. FRANKEL:  Which is why I -- and I mentioned

4    earlier, and I think the government did, that the other three

5    folks got 20 months, 30 months and 30 months concurrent with

6    the state case.

7              THE COURT:  Now you're a trial lawyer because you

8    have repeated it three times.

9              MS. FRANKEL:  Okay.  Well, I was taught I should

10   repeat things three times and it settles in.

11             But I think that if we are going to start from there

12   and say, all right, that's what we are comparing for purposes

13   of disparate sentences, I agree.  They get the benefit of their

14   Rule 11, their cooperation and the lack of a Schedule II.  I

15   agree his sentence should be more than theirs.

16             I don't think a jump to 72, 96, 120 months is

17   justified based only on the additional factors that the

18   government has set out.

19             And, again, we are asking for 48.  We think that

20   reflect an increase that's over a year and a half --

21             THE COURT:  Did you ever figure out what Mr. Beres

22   meant when he said the range was, I forget, 33 to 94 months?

23             MS. FRANKEL:  He was basing that on -- and I think

24   it's attached.

25             I sort of -- it was based on his analysis of

1       Sentencing Commission statistics which --

2               THE COURT:  Never mind.

3               MS. FRANKEL:  Yeah.  I mean I got it out of the

4       pleadings, Your Honor.

5               THE COURT:  Okay.

6               MS. FRANKEL:  I think that those are the reasons

7       that --

8               THE COURT:  I understand.

9               MS. FRANKEL:  I don't know if I have anything else to

10      add.  I don't know if you have additional questions that I

11      might answer.

12              I think that a sentence of 48 months is more than

13      enough to deter this young man.  He's got two little boys.

14      He's going to miss out on their lives.  He's got one who has

15      suffered incredible health concerns.  He's stable now.

16              The first six months of his baby's life he and his

17      fiance' spent living between their home, the hospital and the

18      Ronald McDonald House.

19              It gives him a different value on life, on his, on

20      those around him.  It gives him a different understanding of

21      the impact of his behavior on other folks.

22              He's 30 now?

23              THE DEFENDANT:  Yes.

24

25              MS. FRANKEL:  He was 24 when he got involved here.  I

1   think you're real different at 24 and you've just when you've

2   just walked out the prison doors than you are at 30.

3              He has made a lot of mistakes and he knows it.  I

4   don't want him to miss out on his children's entire childhood.

5              I think a 48-month sentence will serve the purpose of

6   the statute.  It is sufficient and not excessive.  He will

7   learn his lesson.

8              If he's lucky and we can get him -- or you would

9   recommend to put him into the Residential Drug Treatment

10  Program, maybe he can get out of the federal system what the

11  state system completely failed to do, and that was help him or

12  offer him realistic assistance, because I'm not convinced he

13  ever got it.  And I think that, unfortunately, it really is a

14  breakdown of the corrected -- corrections system in the state.

15             You take a kid at 14 and lock him up.  What are you

16  going to do.

17             THE COURT:  You --

18             MS. FRANKEL:  And I agree with you, you can't go

19  back.

20             THE COURT:  No.  I'm just thinking of the language

21  that you use, the breakdown of the system.

22             MS. FRANKEL:  It is.

23             THE COURT:   -- presumes -- I get a turn.

24             MS. FRANKEL:  Okay.

25

Usa v Thoran 11-20468

Sentence Hearing  1-8-2015

1          THE COURT:  The breakdown presumes that it was never

2     not broken.

3          I am a bit older than you.  Probably if I can do

4     math, it would be at least twice.  And the system has been the

5     same.  With everybody talking about -- especially the state

6     system.

7          Actually, there was a glimmer of hope a couple of

8     months ago or a month ago when a legislator proposed a dramatic

9     reform of the parole system and worked on it for two years, had

10     hearings, and it was gutted in the last day by somebody who

11     just didn't care.

12          And the only reason or the only way I can keep my

13     sanity in sending people to federal prison is not because the

14     federal prison is perfect, but it's better.  And I think you're

15     right to ask for the drug program, and there are other programs

16     that I'll recommend.

17          But it's a factor that the people sitting out in the

18     audience on both sides of the room are entitled to be

19     protected.

20          They are entitled to be protected from drugs being on

21     the street.  And they are entitled to be protected from some of

22     the other activities your client has done, his prior record.

23          I am going to ask that the Presentence Report not

24     include arrests without convictions because that could be used

25     by the prison in evaluating your classification in prison.

1          And I'm looking at -- from paragraph 64, will stay

2     and shows non other criminal conduct.

3          And then 65 have all sorts of cases that are on

4     warrant status, primarily from 36th District Court and Highland

5     Park, with one from Plymouth, all district courts, things like

6     improper plates.  And there are warrant statuses from 2012.

7          Those jurisdictions had time to do whatever they

8     wanted in terms of resolving those.  And there's no valid

9     operator's license, operating with a suspended license.  That's

10    the nature of the charges.  Those paragraphs will be taken out

11    of the Presentence Report.

12          MS. FRANKEL:  Thank you, Judge.  And if I --

13          THE COURT:  Which doesn't mean that the Bureau of

14    Prisons won't use the same computer system to put it into their

15    records, but I will put a note -- well, I'm not going to put a

16    note on the sentencing documents.  That will just tell them to

17    go look at it.  And I do think that the prior record is

18    overrepresented.

19          If we had the old system where the guidelines were of

20    greater weight, I would make a point of that.  But it doesn't

21    matter because everybody agrees, including the government, that

22    in this case the circumstances, the guidelines are way too

23    high.  And the only difference the two of you have is what "way

24    too high" means.

25          Are you done?  Is it your client's turn?

1              MS. FRANKEL:  Yes, Judge.

2              THE COURT:  What do you have to say in your own

3    behalf?

4              THE DEFENDANT:  Well, I would like to say that I

5    apologize to the courts and my family for making a decision

6    that I could have made --

7              THE COURT:  It wasn't just --

8              THE DEFENDANT:  Excuse me.

9              THE COURT:  It wasn't just one decision.  You can say

10   it was one decision, I decided to get involved.

11             But every time you participated, that required you to

12   make another decision between following the law and not

13   following the law.

14             THE DEFENDANT:  That's right.

15             THE COURT:  Okay.

16             THE DEFENDANT:  So I apologize, again, for getting

17   involved with people in this organization that I didn't know

18   nothing about.

19             And, you know, in the future I'm going to check out

20   people's, you know, background, you know, resume before I, you

21   know, do anything with them; you know, make sure it's not

22   another incident like this in the future.

23             THE COURT:  That's easy to say when you're not going

24   to be around those people.

25             But one of the things that, in theory anyway and

1  sometimes actually happens, is that you learn things in prison

2  from not just the programs they have, not just getting -- you

3  don't have your GED, do you?

4          THE DEFENDANT:  Yes.

5          THE COURT:  You do have it?

6          THE DEFENDANT:  Mm-hmm.

7          THE COURT:  Okay.  Well, then you're ready to study

8  other things, learn vocations.

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you have any idea what you want to do

11  when you get out?

12         THE DEFENDANT:  No, not yet.

13         THE COURT:  Well, have you ever worked?

14         THE DEFENDANT:  Yes.  Roofing.

15         THE COURT:  Okay.  That's, obviously, a seasonal job.

16         THE DEFENDANT:  Yeah, I know.

17         THE COURT:  And you're getting old enough so you're

18  too old to do it, climbing around on roofs and the like.  And

19  depending on what prison you go to, they have different

20  programs.

21         Have you ever thought you would want to do home

22  repairs, furnace repairs?

23         Do you want to do -- go into business --

24

25         THE DEFENDANT:  Yes.

Usa v Thoran 11-20468

1              THE COURT:  A store or whatever?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Yes to all of those?

4              THE DEFENDANT:  Well, I had a medical equipment

5    company, but after this incident, I was never ever able to do

6    nothing with it.

7              THE COURT:  What kind of training did you have?

8              THE DEFENDANT:  None.  Like the training was

9    basically having the referrals from doctors.  And, you know,

10   that's where why I was inside that circle of doctors, because I

11   was hoping to get referrals for my company.

12             THE COURT:  What were you selling?

13             THE DEFENDANT:  Medical equipment.

14             THE COURT:  Like what?

15             THE DEFENDANT:  Wheelchairs and neck braces, et

16   cetera.

17             THE COURT:  Well, my one bit of advice is if you go

18   into that kind of business, you spend a couple years working

19   for a company that has already established that.  That's, one,

20   very competitive, because insurance pays for a lot of that

21   stuff.

22             THE DEFENDANT:  Yes.

23             THE COURT:  So there's money there.  It's a way to

24   make money.

25             But you are going to be competing against people who

1    have been in the business perhaps for generations or who went

2    to business school or whatever.  But that's something you can

3    pursue while you're in prison.  You can learn some of that

4    through books --

5              THE DEFENDANT:  Right.

6              THE COURT:  -- and classes.

7              But you've got a lot of catching up to do.  And a lot

8    of that is not your fault, but a lot of is has to be done,

9    whoever's fault it is.

10             And while you are in prison, you can be very angry at

11   the judge or the system or whatever.  But if you stay angry and

12   don't do anything in prison, I can guarantee, whether you get

13   25 years or five years, that you're going to go right back to

14   prison.

15             So when you wake up in the morning in prison, you can

16   be angry, but you also have to choose something to do that's

17   going to help you to survive when you get out, so that you will

18   be able to help your children and to help your friends and so

19   you won't have to apologize.

20             Do you have anything else you want to say?

21             THE DEFENDANT:  No.

22             THE COURT:  Okay.  Anyone else have anything else to

23   say?

24

25             MR. NEAL:  Nothing from the government, Your Honor.

1          MS. FRANKEL:  Judge, the only other comment would be

2    with respect to the amount of the loss.

3          And I think that the position of the defendant, it

4    was set out well.  It is page three as attached to the

5    sentencing report.  It's page A 3 attached to the Presentence

6    Report, under Mr. Thoran's objections, set out a combined total

7    loss of $455,126 as reflecting the amount of loss attributable

8    to Mr. Thoran's clients.

9          I think part of the difficulty is the whole idea of

10   foreseeability.  And I don't think that it was foreseeable for

11   a 24 year old who had just walked out the prison doors to even

12   comprehend the size and the amount of money coming into this

13   health care fraud.  It is totally beyond his frame of

14   reference.

15         THE COURT:  But he will have the help of everyone

16   else involved in it.

17         And, quite frankly, if the government gets a small

18   percentage of that back from your client, that's a good thing.

19         I mean we are now arguing about how many angels are

20   on the head of a pin.

21         MS. FRANKEL:  Right.

22         THE COURT:  So you want to respond to that?

23         MR. NEAL:  Your Honor, I would submit that the

24   principles of reasonable foreseeability dictate that Mr. Thoran

25   be held accountable for the entire loss of $2.6 million.

| | |
|---|---|
| 1 | THE COURT:  I'm remembering my days in law school |
| 2 | learning about reasonable foreseeability.  It is an oxymoron. |
| 3 | I mean if it were -- if it were that foreseeable -- |
| 4 | actually, it's redundant.  If it's foreseeable, it's |
| 5 | reasonable. |
| 6 | All right.  The scary thing is I used to teach torts |
| 7 | and I never understood it. |
| 8 | All right.  I'm ready to do my sentencing.  Are you |
| 9 | ready? |
| 10 | DEFENDANT ATTY:  Yes. |
| 11 | THE DEFENDANT:  Yes. |
| 12 | THE COURT:  It's like my mom used to ask me am I |
| 13 | ready to take out the garbage.  There was only one answer she |
| 14 | would accept. |
| 15 | All right.  We all are starting out basically saying |
| 16 | the guidelines are too high.  The government's position is that |
| 17 | ten years would be appropriate. |
| 18 | And the defendant's position is that four years would |
| 19 | be appropriate.  I could just add the two and divide, but that |
| 20 | is not reasonable. |
| 21 | Rather, I have to look at the factors set forth by |
| 22 | Congress in the law, which is 18 USC Section 3553(a) and |
| 23 | realize that the *Kimbrough* case, k-i-m-b-r-o-u-g-h, says that |
| 24 | I'm supposed to impose a sentence sufficient but not greater |
| 25 | than necessary, to carry out the intent of Congress, the goals, |

 1    the values of Congress.

 2            Now they start with the serious of the offense.

 3    Obviously, it's a serious because one of the counts is a

 4    20-year felony, right near the top.

 5            A felony, by definition, is serious.  20 years is

 6    also -- emphasizes how serious it is.  There are only a couple

 7    of statutes that go higher.  And the second count is a

 8    five-year felony.

 9            In terms of general deterrence, I think I agree with

10    the government.  Nothing I do here will impact somebody else

11    who wants to be a marketer.

12            Just like you, a person who decides to be a marketer

13    does not usually do research on how many people have been

14    arrested and sentenced for marketing.  Rather, they would look

15    at how much money could I make by participating.  And the

16    presumption is they won't get caught.

17            I don't know whether you had that presumption or not,

18    but, obviously, you got caught.  And I don't think it would

19    have stopped you from doing this if you knew somebody else got

20    caught before you.

21            In terms of special deterrence, that is to deter you.

22    I'm not sure you have the skills to turn down people who

23    present you with -- not this scheme, but some other easy money

24    kind of scheme, especially given the fact that you don't have

25    the capital or the experience to do what you really want to do,

1    which is to run a legitimate business.

2            And so I'm not sure what I could do to deter you from

3    getting involved in it short of sending you to prison.

4            In terms of dangerousness, these drugs are dangerous

5    on the street.  People die from them and they die fighting over

6    them.

7            In terms of disparity, that's a goal of the

8    guidelines, but when you have 39 defendants who fall into about

9    six or seven different categories in terms of involvement, in

10   terms of cooperation and all sorts of other variables, it's

11   only one of the factors.

12           And one of the reasons I would suggest that the

13   government is not asking for -- I'm looking at the guidelines,

14   either 235 months, which is almost 20 years or more than 120

15   months, is because the singular most bad guy, culpable guy is

16   Mr. Patel, and he got 17 years.  And it will be absurd to give

17   you anything close to 17 years.

18           Because your involvement, while at the high end of

19   involvement of anybody in this group of 39, it doesn't come

20   close to what Mr. Patel did, including giving you the

21   opportunity to get in trouble.  And he's responsible, as you

22   are, for that.

23           And care and treatment.  I think if I expand that to

24   include care, treatment and giving you the skills, the

25   opportunity to get the skills, that supports sending you to

1    prison.

2              Your prior record speaks for itself.  I mean that's

3    why you're standing here looking at possibly 20 years.

4              And your attorney's and the Presentence Report

5    writer's recitation of how you got started in all of this,

6    while obviously accurate, is not a reason alone to give you

7    another chance.

8              If I were to put you out today on probation, I could

9    predict, because of your lack of skills and lack of all sorts

10   of things as a youth, that more likely than not, that you would

11   be back in another courtroom within a year or two.

12             So sending you to prison to pick up those skills is a

13   good choice.

14             Your attitude, I think, is as probably as good as it

15   can be given all the things you've lived through.  But that

16   doesn't guarantee that you're going to be able to survive

17   unless you get time in prison to think about what you've done

18   and to try and improve your judgment.

19             And you've got a very strong support in a family.

20   It's not usual to see as many people here as you have.  And

21   that's a thing that I consider in terms of lowering the

22   sentence, because those people, most of them will be here when

23   you get out, even though the sentence is going to be long.  And

24   that gives you a step up when you get out.

25             And if I'm around and still a judge when you get out,

Sentence Hearing  1-8-2015

| | |
|---|---|
| 1 | I'll meet with you.  And I'll find out if I helped you or hurt |
| 2 | you. |
| 3 | And, at times, you're going to thing I'm the worst |
| 4 | guy in the world, because you're going to be having a lot of |
| 5 | time to think about it in prison. |
| 6 | I'm taking into consideration your age, health, |
| 7 | financial conditions and family responsibilities, but I can't |
| 8 | make your children stop getting older while you're in prison. |
| 9 | That's just a consequence of going to prison.  And it's hard. |
| 10 | It's got to be hard. |
| 11 | All right.  Does anyone have any questions before I |
| 12 | pronounce the actual sentence? |
| 13 | MR. NEAL:  No, Your Honor. |
| 14 | MS. FRANKEL:  No, sir. |
| 15 | THE DEFENDANT:  No. |
| 16 | THE COURT:  Okay.  All right. |
| 17 | As to Counts 1 and 21 of the First Superseding |
| 18 | Indictment and Count 11 of the First Superseding Indictment, |
| 19 | pursuant to the Sentencing Reform Act of 1984, the Court, |
| 20 | considering the Sentencing Guidelines, which we've all agreed |
| 21 | were way too high, and factors contained in 18 USC Section |
| 22 | 3553(a), hereby commits Michael Thoran to the custody of the |
| 23 | United States Bureau of Prisons for a term of 108 months, which |
| 24 | is 9 years on Counts 1 and 21 to be served concurrently. |
| 25 | And as to Count 11 on the First Superseding |

1    Indictment, the Court hereby commits the defendant to the

2    custody of the United States Bureau of Prisons for a term of 60

3    months to be served concurrently with all other counts.

4         How long were you in custody before you got bond in

5    this case?

6         THE DEFENDANT:  Two months.

7         THE COURT:  Okay.  You'll get credit for the two

8    months.

9         On release from imprisonment, you will be placed on

10   supervised release for a term of three years on all count, to

11   be served concurrently.

12        Now I think that's a mandatory minimum three years,

13   but in state court that's called parole.

14        And I would hope that we have the same policies when

15   you get out that we have now, which means that your parole

16   officer will have two jobs.

17        One is the one you know; and that is to police, to

18   make sure you're where you're supposed to be and to -- the

19   other job is to help you transition back into society.

20        Which means -- I call that the social worker job,

21   helping you get a job, helping you get counseling if you need

22   it, helping you find a place to live and those sorts of things.

23   That may not be available to you if you were not on parole.

24        It is an unusual system we have, that sometimes

25   somebody on parole has more programs available to them than if

Sentence Hearing  1-8-2015

1      you're not.

2              And those three years on all count to be run

3      concurrently.

4              Restitution is in the amount that the prosecutor just

5      said, which is payable to the Clerk of the Court for

6      disbursement and that's two point whatever million.  It will be

7      in your final judgment papers.

8              And the money will be paid to the Clerk of the Court

9      who will send it on to Medicare and Medicaid, Medicare in the

10     amount of 2.1 million and Medicaid $733,000.

11             You owe $300 now, a hundred dollars for each count.

12     Can you pay that now or has it been paid?

13             THE DEFENDANT:  Uhm ...

14             THE COURT:  Mr. Thoran?

15             THE DEFENDANT:  Excuse me?  Can you say that again?

16             THE COURT:  The law requires a $100 fee for each

17     count.  There's a total of three counts, $300.

18             Are you able to pay that or have you paid that?

19             THE DEFENDANT:  No.

20             THE COURT:  And you're not able to pay it?

21             THE DEFENDANT:  Not right now, no.

22             THE COURT:  Okay.  Well, then it's due when you get.

23

24     out.

25             THE DEFENDANT:  Okay.

Sentence Hearing  1-8-2015

1          THE COURT:  So that you do not have to participate in

2    the Inmate Responsibility Program in prison, which

3    theoretically teaches you how to manage money; but, in fact,

4    would take up to 25 percent of the earnings you have in prison,

5    which are not going to be very great.  So it doesn't teach you

6    anything and it just makes it a little bit harder for you to

7    survive in prison.

8          I'm not imposing a fine, I'm not imposing the cost of

9    incarceration or the cost of supervision, due to your lack of

10   financial resources.

11         Mandatory drug testing is ordered.

12         While on supervision, you shall abide by the standard

13   conditions as adopted by the United States District Court for

14   the Eastern District of Michigan and shall comply with the

15   following special conditions due to the substance abuse, mental

16   health and criminal history, as well as the restitution

17   obligation.

18         And while you are in prison, you shall be given the

19   Intensive Drug Program as your attorney has asked for.

20         You will be evaluated for mental health support if

21   you need it.

22         Have you thought about where you want to serve your

23   time?

24         MS. FRANKEL:  Judge, we have asked, and I believe it

25   is in the Sentencing Memo, to allow him to be at Milan so that

Usa v Thoran 11-20468

1   he's close to his children.

2         THE COURT:  I will make that recommendation, but it's

3   only a recommendation.  The Bureau of Prisons will do what they

4   choose to do.

5         And one of the factors may be that that's currently

6   where Mr. Patel is.  But it's a big enough place so they can

7   keep him separate, Mr. Patel separate.

8         While on supervised release, you will participate in

9   a program approved by the Probation Department for mental

10  health counseling, if necessary, and you shall participate in a

11  Cognitive Behavior Therapy Program as approved by the probation

12  officer, if necessary.

13        You will provide financial information to the parole

14  officer and make monthly installment payments on your

15  obligation.

16        And as I think the government said, any time somebody

17  involved in the conspiracy makes a payment, that reduces what

18  you owe, as it's joint and several.

19        And you shall not have any new credit charges when

20  you get out unless okayed by the parole officer.

21        Counsel, are there any other programs that you think

22  would be appropriate in prison?

23

24        MS. FRANKEL:  I think that the Court has

25  satisfactorily addressed them.  I don't know of anything else.

1          THE COURT:  Anything else you want to say?  Any

2    objections to any of this?

3          MS. FRANKEL:  At this time, Judge, we would

4    respectfully object to the sentence as procedurally and

5    substantively unreasonable.

6          THE COURT:  Be careful what you ask for, given the

7    agreement of the government at this level.

8          MS. FRANKEL:  I understand, Judge.

9          MR. NEAL:  Your Honor, I would like to clarify

10   something for the record.

11         Count 11 is the conspiracy to distribute controlled

12   substances count.  That's a 20-year felony.

13         Count 21 is the kickback count.  It's a five-year

14   felony.

15         I believe when the Court was imposing sentence, it

16   imposed a 60-month sentence on Count 11 and a 108-month

17   sentence on Count 21.  I respectfully suggest those should be

18   reversed.

19         THE COURT:  You are agreeing to a reversal?

20         Let me see what I did here.

21         I know that I mistakenly grouped all three counts at

22   the beginning.

23         But if I did say what you suggest I say, I meant to

24   say as to Counts 1 and 21, which are 20-year felonies, a term

25   of 108 months.

Sentence Hearing  1-8-2015

```
 1              Is that right?
 2              MR. NEAL:  Your Honor, I believe Count 1 is a 10-year
 3      felony.  Count 11 is a 20-year felony.  Count 21 is a five-year
 4      felony.
 5              MS. FRANKEL:  That's correct, Judge.  I think you
 6      just flipped 21 and 11 around.
 7              THE COURT:  Okay.  Heads will roll.  But that's the
 8      way it will read then.  Okay?
 9              Anything else?
10              MR. NEAL:  Your Honor, the government would
11      respectfully renew its motion for bond to be revoked as to
12      Mr. Thoran and ask that he be remanded into custody at this
13      time.
14              THE COURT:  Okay.  And I think, Mr. Thoran, I told
15      you to bring your toothbrush.
16              Do you remember that?
17              THE DEFENDANT:  Yes.  I didn't how soon you meant,
18      though.
19              THE COURT:  Well, now you know.
20              And what I'm going to do -- when you are evaluated
21      for placement by the Bureau of Prisons, one of the factors is
22      if you turn yourself in, that, obviously, will be in your favor
23      in terms of the level of security while you are in prison.
24              So I am going to let you turn yourself in, but it's a
25      brief respite.  And I'm going to ask that you turn yourself in
```

Sentence Hearing  1-8-2015

1     to the Marshals at the far end of the hall.  And that will show

2     up on your record or should show up on your record as

3     self-reporting.

4           And from there the Bureau of Prisons -- and I'm going

5     to ask Mr. Neal and your attorney to make sure that the Bureau

6     of Prisons facilitates your designation so you're not sitting

7     in a County Jail somewhere for more than the time it should

8     take them to designate.

9           And it is twenty-to-four.  I'm going to give you ten

10    minutes to say good-bye to your family and to walk to the end

11    of the hall.

12          You will not be escorted, because if you were to be

13    escorted, you wouldn't get the benefit of turning yourself in.

14    It's only because you've been able to show up when you're

15    supposed to show up that I'm allowing this to happen.

16          And I've got another matter here in a separate case.

17    So I'm going to need the courtroom in about five to ten

18    minutes.

19          And the Marshals will be expecting you.  And they are

20    so attuned to this, they may even watch you walk.  But they are

21    not going to put you in handcuffs until they transport you

22    after you self-report.

23          Your attorney can go with you to show you where.

24          Any questions?

25          THE DEFENDANT:  No.

1          THE COURT:  Okay.  You do have a right to appeal.

2   And your attorney has already protected you procedurally.

3          If you cannot afford an attorney or transcript or the

4   filing fee, the Court will take care of all of that for you.

5          Anything else I have to tell him?

6          You are standing because?

7          MR. PRATT:  Your Honor, I just wanted to clarify

8   something.

9          THE COURT:  Identify yourself, please.

10         MS. CONNELLY:  Christine Connolly from the Probation

11  Department.

12         I wasn't certain that I heard the Court read the

13  condition for drug testing other than mandatory testing.

14         THE COURT:  Yes.

15         MS. CONNELLY:  And I just wanted to clarify that.

16         THE COURT:  What should I have read?  I mean is there

17  more than just mandatory testing?

18         MS. CONNELLY:  Yes.

19         The defendant's participation in an approved program

20  for substance abuse, which may include testing, et cetera.

21         THE COURT:  Okay.

22

23         MS. CONNELLY:  Thank you, Your Honor.

24         THE COURT:  That will be in there.  That's something

25  you have to worry about when you get out, if your parole

Usa v Thoran 11-20468

1   officer thinks you need drug testing.

2

3           Anything else?

4           MR. NEAL:  Nothing on behalf of the government, Your

5   Honor.

6           MS. FRANKEL:  Nothing on behalf of the Defense,

7   Judge.

8           THE COURT:  All right.  It's going to be hard.  It's

9   a long time, but do your best and, hopefully, I'll see you when

10  you get out.

11          We are in recess.

12          MR. NEAL:  Thank you, Judge.

13

14          *(Proceedings adjourned at 3:41 p.m.)*

15

16

17          CERTIFICATE OF COURT TRANSCRIBER

18

19

20  I hereby certify that I have transcribed

21  these proceedings to the best of my ability,

22  training, and knowledge.

23

24

25  CAROL S. SAPALA, RMR-FCRR        April 22, 2015

Sentence Hearing  1-8-2015